Walter T. Gunn, Appellee, v. Minnesota Mutual Life Insurance Company, Appellant.

Gen. No. 9,406.

314

Heard in this court at the October term, 1943. Opinion filed February 29, 1944. Rehearing denied April 22, 1944.

SCOTT, MACLEISH & FALK, of Chicago, LINDLEY, JONES, GRANT & SEBAT, of Danville, and DOHERTY, RUMBLE, BUTLER, SULLIVAN & MITCHELL, of St. Paul, Minn., for appellant; WENDELL J. BROWN, of Chicago, HAROLD F. LINDLEY, of Danville, and ROBERT O. SULLIVAN, of St. Paul, Minn., of counsel.

BOOKWALTER, CARTER & GUNN, of Danville, for appellee.

MR. JUSTICE RIESS delivered the opinion of the court.

Plaintiff appellee filed suit against the defendant appellant in the circuit court of Vermilion county seeking recovery of certain premiums alleged to have been paid under the provisions of a retirement life annuity contract dated December 4, 1931. A trial was had by the court without a jury and judgment in the sum of $1,239.36 was rendered in favor of the appellee, from which judgment the appellant company has perfected its appeal to this court.

The annuity contract in question provided for payments by plaintiff appellee Walter T. Gunn to the defendant appellant insurance company, a Minnesota corporation, of monthly advance premiums in the sum of $154.92, beginning with the date of the contract. The contract further provided that when appellee Gunn attained the age of 65 years, if the policy was then in force, the appellee was to receive from the appellant company annuities in monthly payments of $213.03 during the remainder of his natural life; that in the event of his death prior to attaining said age of 65 years, certain life insurance payments set forth therein were to be made to the wife of appellee, Vina Gunn, as beneficiary, and in the event of appellee becoming totally and permanently disabled, premium payments were to cease and annuity payments in instalments of $276.73 per month were to become payable to him thereafter.

Appellee Gunn's application for the policy was written and the policy subsequently delivered by L. P. Livengood, designated in said application, a photostatic copy of which was made a part of the policy, as a "general agent" of said company and in other exhibits as agency manager at Danville, Illinois, and as an "authorized collector" of the company. On pages 1 and 2 of its reply brief, appellant recites the following as among other undisputed facts, *viz:* "That under date of December 1, 1931, the plaintiff, then an attorney at Danville, Illinois, age 52, made written application to the company for a retirement life annuity with disability benefit. This application was handled by one L. P. Livengood, at that time a general agent for the company at Danville." That "Under date of December 4, 1931, the defendant company with its home office at St. Paul, Minnesota, issued the policy involved in this suit." The policy was delivered to the appellee at Danville by said company agent Livengood on January 4, 1932, at which time the first monthly premium of

$154.92 was paid to said agent and collector. All premium payments were made by checks of appellee Gunn upon his personal account in the Second National Bank of Danville, Illinois, and were all delivered to and cashed by said company agent Livengood. The cancelled checks were offered and admitted in evidence as exhibits showing payments to said agent in sums of $154.92, bearing dates of February 1, 1932, March 4, 1932, March 31, 1932; a similar check dated July 1, 1932 for $309.84 and one dated September 27, 1932 for $464.76, aggregating $1,239.36. The cancelled check of January 4, 1932 was not found, although payment of the first four monthly premiums was admitted by the company.

The checks dated February 1, 1932 and March 31, 1932 were made payable to the order of L. P. Livengood for the amount of said monthly premiums, and the checks dated March 4, 1932, July 1, 1932 and September 27, 1932 were all made payable to the "Minnesota Mutual Life Ins. Company," the appellant herein. The checks bore indorsements by L. P. Livengood upon those made payable to him and the remainder were so indorsed "Minnesota Mutual Life Ins. Co., L. P. Livengood, Agency Mgr. 82." Among others, a premium receipt for a monthly payment was issued from the home office of the company at St. Paul and delivered to the appellee acknowledging payment of premium due on February 4, 1932, containing therein the clause "Authorized Collector. This receipt to be valid must be countersigned by the Home Office Cashier or the Authorized Collector named herein k. L. P. Livengood, Box 52 Danville, Ill. Date Received—— Authorized Collector (Stamp) Paid Mar 11 1932 Home Office Cashier, by E. O." A similarly worded company receipt dated January 4, 1932 for premium of $154.92 of Walter T. Gunn, 1124 Sheridan, Danville, Ill., was also stamped "Paid March 11, 1932, Home Office Cashier, by E. O." and was delivered to appellee.

After January 4, 1932, a notice of lapse of the policy for alleged nonpayment of premium due on the date of the policy was sent· to the appellee, but his policy was duly reinstated. Again, after May 4, 1932, notice to the insured of lapse of the policy for nonpayment of monthly premium due April 4, 1932, was given appellee. Following this notice of lapse, the two checks, dated, respectively, July 1, 1932, in the sum of $309.84 and September 27, 1932, for $464.76, payable to the order of said insurance company, were delivered to and cashed by the company's said general agent L. P. Livengood. No form of receipt was issued therefor to the assured nor was any application signed or notice of reinstatement given to the appellee following said notice of lapse. No repayment or refunding of either of said payments to the insured was ever made by or through either the company or by its said agent.

Appellant company admitted (Abst. 12) "that said Livengood did report promptly the receipt of said first four monthly premiums, and the defendant issued its official receipt therefor," and then avers that "It neither admits nor denies that the plaintiff executed and delivered to said Livengood a check dated July 1, 1932 and his check dated September 27, 1932 . . . but says that if the checks were made and delivered to said Livengood and were cashed by him that he never reported the same and never paid the net premiums represented thereby to the defendant, but that if he received any money on said checks, he converted the same to his own use." Appellant further recites its contention that the agent had no actual authority under the terms of the policy to accept premiums past due, to reinstate or to accept or cash checks tendered in payment of past premiums under a lapsed policy. It further appears from the evidence, both orally and by exhibits admitted over defendant's objection to proof of any facts occurring subsequent to the filing of the suit, in denial of its plea that it had never received

such premiums, that the home office of the defendant company had since the suit was filed credited on its books the receipt of premiums covered by appellee's two last-mentioned checks dated July 1, 1932 and September 27, 1932, less agent Livengood's commissions, which checks had been cashed by Livengood and which net premiums therefrom were so credited at the home office on its open running account with said general agent and collector against renewal premium commissions due him from the company on business previously written and premiums collected.

Appellee Gunn asserts that under his complaint, as amended, the collection of said premiums from the insured by said general agent and authorized collector after notice of lapse of the policy was not only binding upon the company under the circumstances in evidence but by such subsequent acceptance of the premiums the company had thereby expressly ratified such transactions and authority of its agent and is estopped from denying the same, although said policy was never reinstated by the company nor were the premiums so paid at any time thereafter tendered or returned to the insured by the company, which denied all liability upon demand therefor.

All of the aforesaid transactions between the company and its agent concerning the agent's failure to account for premiums so collected or to cause such reinstatement were done without the knowledge of and were concealed from the appellee Gunn until shortly before and partially after the filing of his suit to recover such premiums based upon the repudiation and violation of the terms of its contract by the company. Appellee asserts that the company, by and through the acts of its said general agent and collector, for which the assured was in nowise responsible, had repudiated and violated the provisions of said policy; had given him notice of lapse and had failed to reinstate the contract or to credit said payments toward the monthly

premium instalments due for the month of April and May covered by the check for $309.84 and for the succeeding months of June, July and August covered by premium check for $464.76 payable to the order of the company and so delivered to and cashed by its said collector and general agent and subsequently credited on the books of the company after suit was filed herein, or in default thereof to notify appellee of the facts and refund such payments; that such facts were so fraudulently concealed from and wholly unknown to the insured until 1939, when and whereupon his cause of action for recovery of such premiums and accrued interest thereon at the rate of five per cent per annum as damages for the violation of the contract first accrued to him, under and by virtue of the provisions of sec. 23, ch. 83, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 107.282], concerning the fraudulent concealment of facts which prevent the bar of the statute of limitations from running and result in a right of action arising and accruing upon discovery thereof, and which section reads as follows: "If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within five years after the person entitled to bring the same discovers that he has such cause of action, and not afterwards."

While there were a number of conferences and conversations relating to the policy and premium payments between the assured and the general agent and district manager Livengood, who had negotiated and carried on all of the foregoing transactions between the parties and had collected all premiums for and on behalf of the company, it appears that Livengood neither communicated to appellee Gunn his failure to transmit or report the net premiums collected in July and September 1932, to the home office of the company, until 1939, when the concealed facts first became known to appellee and to the home office of the company at

St. Paul, at which time a representative of said company came to Danville and it was then learned by the appellee that agent and collector Livengood had not reported the receipt of the last two checks which had both been made payable to the order of the Minnesota Mutual Life Insurance Company, although said agent had indorsed, cashed and collected the same, in a similar manner as he had received, cashed and collected all the previous checks, wherefrom he had made due remittances of net premiums to the home office of the company, as admitted by the appellant herein. After a number of further conferences between the company representative from the home office, the insured, Livengood and his successor as general agent, Childs, and some correspondence between said parties, the company refused to acknowledge that it had received the payments in question or was responsible to account for payments to agent Livengood by the assured under the two last-mentioned checks; contending, that he was not their general agent; was not authorized to collect the same; was acting for the insured and that the latter must look to Livengood to recover his money; that no lawful reinstatement of the policy had been made; that the same had lapsed; that in any event, the claim of appellee for a refund of the premiums thereon was barred by both the five and the ten year statutes of limitations; or, if it be held by the court that acceptance of premiums after lapse of the policy constituted a waiver of preceding conditions and entitled same to reinstatement, then the earned premiums for the succeeding months after such lapse occurred had long since been absorbed and the defendant had thereby become relieved from further accounting for such premiums.

Aside from the designation of agent Livengood as a "general agent," "agency manager" and "authorized collector" of the company and the subsequent ratification of his actions in the collection of all the

premiums in question by the company's acceptance thereof, it was expressly provided by sec. 346, ch. 73, Ill. Rev. Stat. 1935, in force at the time the contract was entered into and the collections were made by said agent, that ''Whoever solicits insurance on behalf of any company not chartered by and not established within this State, or transmits, for any person other than himself, an application for life insurance, or a policy of life insurance, to or from such company, or advertises that he will receive or transmit the same, shall be held to be an agent of such company to all intents and purposes, and subject to all the duties, requisitions, liabilities and penalties set forth in the laws of this State relating to life insurance companies not incorporated by the Legislature thereof.'' The above applicable provisions of said statute were construed by the Supreme Court in the case of *Continental Ins. Co. v. Ruckman,* 127 Ill. 364, 20 N. E. 77. Moreover, by receiving and retaining the payments made after April 4, 1932, the defendant waived restrictions in the contract concerning reinstatement and time of payment of the premiums. *Baxter v. Metropolitan Life Ins. Co.,* 318 Ill. 369, 149 N. E. 243; *John Hancock Mut. Life Ins. Co. v. Paulina Schlink,* 175 Ill. 284, 51 N. E. 795. A general agent, clothed with power to solicit insurance, receive the application and forward it to the company, receive and deliver the policy and collect the premium, has power to waive a condition of the policy notwithstanding that power is negatived by provisions in the policy and his contract of employment. *John Hancock Mut. Life Ins. Co. v. Schlink, supra. Dromgold v. Royal Neighbors of America,* 261 Ill. 60, 103 N. E. 584.

The persistent contention of the defendant company that no reinstatement of the policy could occur without a written application of the insured for such reinstatement and the delivery of an official receipt to the insured for the payment of each premium in advance,

does not preclude a waiver of such provisions merely because its agent fails to procure such application and give such receipt, where the insurer accepts payments of a premium after it is due and after the period of grace has passed. These provisions of the policy could be and in legal effect were waived by the subsequent collection and receipt of such premiums by the company under the facts and circumstances appearing in evidence in this case. *Baxter v. Metropolitan Life Ins. Co., supra.* However, we are not in accord with appellant's alternative contention that if this court now holds that the receipt of the premiums subsequent to notice of lapse constituted a waiver of the above terms of the policy, the company becomes thereby entitled to retain the payments as earned premiums for the succeeding five months after April 4, 1932 and need not account therefor, regardless of any alleged breach of its contract. This belated contention, adverse and contrary to their entire course of conduct in lapsing and failing or refusing to reinstate the policy and in denying that it had been reinstated or continued in effect; in denying that such premiums had been paid to or received by the company; although subsequently retaining the premiums in question, as disclosed by the evidence, constituted a material breach of their contract, entitling the plaintiff appellee to elect his own remedy, and at his option to consider the contract rescinded and at an end and to sue for damages for such repudiation and breach of contract by the company when such facts came to his knowledge.

In this action, the appellee is not seeking to enforce a continuation or reinstatement of the contract and is not required to do so, but at his proper election may treat the contract as rescinded and at an end and recover damages for repudiation and breach of the contract, which both this court and the trial court have found from the evidence to have been committed by the company. Having thus breached the contract in ques-

tion and disclaimed all further liability thereunder, the company cannot now deprive the plaintiff Gunn of his right to elect his own remedy. The latter course, he elected to pursue upon learning the fraudulently concealed facts which gave rise to his cause of action, and the trial court properly held that under the evidence herein, he was entitled to recover damages. *Lake Shore & M. S. Ry. Co. v. Richards,* 152 Ill. 59, 38 N. E. 773; *Bowden v. Board of Education,* 264 Ill. App. 1.

Under the facts and circumstances disclosed by the evidence herein the measure of damages would be the amount of such premiums so received and retained by the company following lapse of the policy, with interest at the legal rate of five per cent per annum thereon from the dates of said receipt and conversion of premium payments in 1932 to the date of the judgment, in return for which no protection whatever had been furnished appellee under the provisions of the policy.

There is no force in defendant's further contention that the cause of action, if any, which the appellee had was against Livengood "because it was his own money that Livengood had converted." By the terms of the contract under which Livengood was appointed, he was clothed with the power of soliciting insurance, delivering policies and collecting premiums and was therefore acting as the agent of the insurance company and not as agent of the policyholder. *John Hancock Mut. Life Ins. Co. v. Schlink, supra,* p. 289; *Continental Ins. Co. v. Ruckman, supra;* ch. 73, sec. 346, Ill. Rev. Stat. 1935.

We further hold from the facts herein that the defendant had furnished four months' partial protection provided for under the first four payments of the premiums for which no recovery can be had under the allegations of the complaint for money had and received and for which no special damages were alleged and proven. *Brown v. Federal Life Ins. Co.,* 353 Ill.

541, 187 N. E. 484; *Phoenix Mut. Life Ins. Co. v. Baker,* 85 Ill. 410; *Brooklyn Life Ins. Co. v. Weck,* 9 Ill. App. 358. But as to the last two checks for the payment of premiums the company had neither reinstated the policy nor furnished to the appellee any protection or otherwise complied with the terms of its contract growing out of the receipt of said funds by and through its said agent and collector Livengood, and that upon the facts coming to the knowledge of the insured in 1939, a cause of action accrued to the latter for the recovery of the amount of said two last-mentioned checks and interest thereon; that legal interest has so accrued from the time of the receipt and conversion of said amounts at the statutory rate of five per cent per annum to the date of the judgment for such principal and interest in the aggregate amount of $1,191.59; that the appellee was and is entitled to recover judgment for said amount but is not entitled to recover herein the amount of the prior premiums paid to and receipted for by the company under the contract while so in force and complied with by the company.

While we have not discussed all of the assignments of error or contentions by the appellant, we have fully considered the same, and we find no substantial merit therein under the facts and circumstances disclosed by the record.

Under the provisions of ch. 110, sec. 92 (f) of the Civil Practice Act, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 104.092] if appellee will file within 20 days a remittitur of the amount of said judgment in excess of said amount of $1,191.59, *viz:* $47.77, a judgment shall be entered here for the amount of $1,191.59 in favor of the appellee and against the appellant and the judgment of the circuit court so modified shall be affirmed; that upon failure to so file said remittitur, said cause is ordered to be remanded with directions to the trial court to enter judgment for said latter amount.

*Judgment modified and affirmed.*