## The John Hancock Mutual Life Insurance Company

### *v.*

### Paulina Schlink.

*Opinion filed October 24, 1898.*

1. Insurance—*agent appointed by State agent of foreign insurance company is the company's agent.* One employed to solicit insurance, deliver policies and collect premiums under a contract with the State agent of a foreign insurance company is the agent of the insurance company, and not of the State agent.

2. Same—*general agent has power to waive conditions of policy.* A general agent, clothed with power to solicit insurance, receive the application and forward it to the company, receive and deliver the policy and collect the premium, has power to waive a condition of the policy notwithstanding that power is negatived by provisions in the policy and his contract of employment.

3. Same—*right of general agent to waive pre-payment of first premium.* A general insurance agent who collects enough cash on the first premium to pay the part due the company may extend credit for the part representing his commission, or may accept goods in payment thereof; and a policy delivered under such conditions is binding on the company, though the terms of the policy require cash payment of the first premium before delivery.

4. Same—*general agent may deliver policy knowing the insured is sick.* A provision in a life insurance policy that it shall not take effect "until delivered and the first premium thereon paid during the lifetime and *good health* of the insured," may be waived by the general agent and the policy be delivered and the premium accepted with knowledge that the insured is ill at the time.

*John Hancock Life Ins. Co.* v. *Schlink,* 74 Ill. App. 181, affirmed.

Appeal from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Peoria county; the Hon. T. M. Shaw, Judge, presiding.

Isaac C. Edwards, for appellant:

Life insurance is a cash business. Its disbursements are all in money, and its receipts must necessarily be in the same medium. This is the universal usage and rule of all such companies. *Hoffman* v. *Insurance Co.* 92 U. S. 161, and authorities cited; Cook on Life Ins. 167-170.

Thus, an agent was held without authority to waive conditions of a policy, it being provided in the contract that no alteration or waiver of its conditions should be good unless made at the head office and signed by an officer of the company. *Marvin* v. *Insurance Co.* 85 N. Y. 278; *Brown* v. *Insurance Co.* 59 id. 298.

So when it was provided that no persons except the president and secretary, acting together, were authorized to make, alter or discharge contracts or waive forfeitures. *Lantz* v. *Insurance Co.* 20 Atl. Rep. 80.

One who deals with an agent is bound, at his peril, to advise himself of the agent's authority. *Boltz* v. *Huston*, 23 Ill. App. 579; *Bridge Co.* v. *Baker*, 75 Ill. 139; *Peabody* v. *Hoard*, 46 id. 242; *Davidson* v. *Porter*, 58 id. 300; *Baxter* v. *Lamont*, 60 id. 237; *Reynolds* v. *Ferree*, 86 id. 570; *Abraham* v. *Weiller*, 87 id. 179; Paley on Agency, 199.

JOHN M. NIEHAUS, and PAGE, WEAD & ROSS, for appellee:

Where an insurance company has delivered its policy, the delivery is *prima facie* evidence that the condition in the policy providing the insurance shall not take effect until the premium is paid is waived. *Gosh* v. *Insurance Co.* 44 Ill. App. 266; *Insurance Co.* v. *Fahrenkrug*, 68 Ill. 463.

By the same principle, delivery of the policy to one known to be sick is evidence of an intention to waive a provision requiring the first premium to be paid while the insured is in good health. *Insurance Co.* v. *Quinn*, 41 N. Y. Sup. 1060; *Insurance Co.* v. *Quandt*, 69 Ill. App. 650.

The action of the agent in accepting $25 in cash and an agreement for the delivery of a sewing machine in full payment of the first premium was valid and binding on the company. This is especially true since in this case the agent received enough cash to more than pay in full that portion of the premium to which the company was entitled from him as agent. 2 May on Insurance, secs. 350, 360 *a*, 360 *b;* Mechem on Agency, sec. 931, div. 1;

*Insurance Co.* v. *Ward,* 90 Ill. 547; *Insurance Co.* v. *Gillman,* 112 Ind. 7; *Terry* v. *Insurance Co.* 4 N. E. Rep. 18; *Life Ass.* v. *Sibley,* 57 Ill. App. 247; *Kerlin* v. *Life Ass.* 35 N. E. Rep. 39; 36 id. 156; *Behler* v. *Insurance Co.* 68 Ind. 347; *Young* v. *Insurance Co.* 45 Iowa, 379.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This was an action brought by Paulina Schlink on a policy of insurance issued on July 22, 1895, by the John Hancock Mutual Life Insurance Company on the life of Frederick Schlink. In the declaration the policy was set out *in hæc verba,* and it was averred that the policy was delivered to Frederick Schlink on the 7th day of August, 1895, and that he died on the 12th day of the same month. To the declaration the defendant pleaded the general issue, and also filed four special pleas, in which it set up a provision of the policy which reads as follows: "This policy shall not take effect until delivered and the first premium hereon paid during the lifetime and good health of the insured." Defendant averred that the policy was not delivered and the first premium paid during the lifetime and good health of the insured. To the pleas the plaintiff replied double: First, she traversed the facts set up in each plea; and second, she confessed the allegations of fact set up in the pleas and set up new matter in avoidance. In the replications confessing and avoiding it was averred that there was a waiver of the conditions of the policy on the part of the insurance company. To the replications rejoinders were filed, and on a trial before a jury the plaintiff recovered a verdict for $2175, upon which the court entered judgment, which, on appeal, was affirmed in the Appellate Court.

The appellant has assigned on the record six errors, three of which, the first, second and fifth, involve questions of fact which have been settled by the judgment of the Appellate Court and need not be considered here. The others, the third, fourth and sixth, are as follows:

"*Third*—The Appellate Court erred in holding that appellee's first, fourth, fifth and sixth instructions, or either of them, were the law.

"*Fourth*—The Appellate Court erred in holding that the trial court properly refused each of appellant's first, second, third, fourth and tenth refused instructions.

"*Sixth*—The Appellate Court erred in sustaining the rulings of the trial court in the admission and rejection of evidence."

In order to obtain a clear view of the questions of law presented by the record a brief statement of the facts is required.   In the opinion of the Appellate Court will be found a statement of the facts which seems to be substantially correct, as follows:

"Charles Ballance was acting as agent for appellant at Peoria under a contract with J. B. Pendergast, the State agent of the appellant for the State of Illinois.  Ballance had an office in Peoria, which had upon it a business sign designating him as general agent of appellant, and upon the stationery used by him he so called himself.   While purporting to act as such agent Ballance solicited Frederick Schlink, appellee's husband, to take out a policy of insurance upon his life in appellant's company.  After some negotiations between the parties an arrangement was made between Ballance and Schlink for the issuance of a policy on the life of the latter for $2000, upon which the premium was to be $63.70.  In payment of this premium it was agreed by the parties that a certain indebtedness of $18, owing by one Downey to Schlink, should be assumed by Ballance and canceled, and that Ballance should take and receive from Schlink, in further part payment of the premium, a sewing machine to be selected by the wife of Ballance from the machines which Schlink had on hand for sale, and the difference either way was to be paid in cash,—that is, if the machine and the Downey indebtedness amounted to more than the premium, Ballance should pay the difference in cash

to Schlink, and on the other hand, if these two items did not pay the premium, Schlink should pay Ballance the difference in cash.   In accordance with this agreement Frederick Schlink made and delivered to Ballance a formal application for a policy of insurance upon his life for the sum of $2000, which was forwarded by said Ballance to appellant company, which accepted the risk, issued the policy and forwarded the same to Ballance for delivery.   After receiving the policy Ballance saw the assured, Frederick Schlink, and notified the latter he had the policy, and was told to come and get the sewing machine and the money for the premium.   Before the policy was actually delivered the assured became ill with typhoid fever, whereupon the agent, Ballance, called on George Schlink, a brother of the assured, and informed him about the agreement and the policy, and told said George Schlink that if he would pay $25 he (the agent) would put the policy in force.   After seeing the attending physician, said George Schlink went to the office of Ballance to pay the money and get the policy.   Ballance being absent, his clerk accepted the $25 and delivered the policy.   Three days afterwards the assured, Frederick Schlink, died from the effects of the typhoid fever."

The contract under which Ballance was appointed agent contained these provisions:   "The said J. B. Pendergast hereby appoints said Charles Ballance agent, with authority to procure applications for policies of insurance upon the lives of individuals, and to collect premiums, in accordance with the rules of said company. * * * The said party of the second part, as said agent, shall in no case alter, modify, waive or change the terms, rates or conditions of any paper or document issued by said company, nor receive moneys due or to become due to said company except on policies or renewal receipts signed by an officer of said company."

It is contended in the argument of counsel for appellant—first, that Ballance was the agent of Pendergast,

and not the agent of appellant, and hence he could not bind the company; second, that by the language of the policy, "no person except the president or secretary is authorized to make alterations or discharge contracts or waive forfeitures," although Ballance was the agent of the company he could not waive compliance with any of the provisions of the policy; third, that Ballance, although the agent of the company, could not accept anything in payment of the first premium but cash, nor could he waive performance of the rules of the company.

In the giving and refusing of instructions the court held adversely to appellant on the propositions mentioned, and what will be said in passing on the propositions will dispose of the third and fourth assignments of error without setting out the instructions given for the plaintiff and refused for the defendant.

As to the first proposition, by the terms of the contract under which Ballance was appointed he was authorized to procure applications for policies of insurance upon the lives of individuals, and to collect premiums, in accordance with the rules of the company. He was entrusted with the power of delivering policies for the company. Clothed, therefore, with the power of soliciting insurance, delivering policies and collecting premiums, Ballance was the agent of the insurance company, and not the agent of Pendergast. (Hurd's Stat. chap. 73, par. 203; *Continental Ins. Co.* v. *Ruckman*, 127 Ill. 364.) In the *Ruckman case* it was said (p. 376): "The General Assembly having power to impose upon foreign insurance companies coming into the State to do business, such reasonable terms and conditions as it saw fit, had an undoubted right to make such companies responsible, not only for the acts of those who are in fact their agents, but of those who assume to act as their agents and in fact aid them in the transaction of their insurance business." The fact that the written contract under which Ballance was acting was made by Pendergast, State agent of the

insurance company, did not constitute him an agent of Pendergast. Ballance advertised as general agent of the company. He acted for and in behalf of the company. The company accepted his acts and forwarded policies to him to be delivered in pursuance of contracts made by him.

As to the second contention, while it is true that the policy provides that no person except the president or secretary is authorized to make alterations, discharge contracts or waive forfeitures, yet if Ballance was the agent of appellant, as we think he was, with power to solicit insurance of Schlink, receive the application, forward it to appellant, receive the policy when issued, collect the premium and deliver the policy, then he had power to waive a condition of the policy. In Richards on Insurance (2d ed. sec. 95) the author says: "An agent of a life insurance company who is intrusted with the business of closing the contract by delivering the policy is held to have an implied authority to determine how the premium then due shall be paid, whether by cash, or, as is sometimes done, by giving credit, in which case the agent becomes the creditor of the insured and the debtor of insurer. In that event, though the agent subsequently defaulted and the money never reached the company, the policy would still be binding. By the weight of authority the agent is held to have this discretionary power, although the policy in terms denies it; but this is based upon his possession of the document for the purposes of delivery, and his instructions to deliver it, and consequently his power does not extend to subsequent premiums or premium notes."

In *Eclectic Life Ins. Co.* v. *Fahrenkrug*, 68 Ill. 463, it was said (p. 467): "It is insisted * * * by the terms of the policy the agents are prohibited from altering or discharging contracts or waiving forfeitures. This objection we do not deem tenable. The question in cases of this kind is not what power did the agent in fact possess, but

what power did the company hold him out to the public as possessing. * * * It is immaterial what may have been said in the policy in regard to the payment of the premium. It was within the power of the company, acting through its agents, to change entirely the mode of or dispense with the payments as provided by the policy and adopt a different mode and time of payment."

In *Phenix Ins. Co.* v. *Hart*, 149 Ill. 513, this court said (p. 522): "The cases are not uniform throughout the country in respect of when notice to or knowledge of the agent, or representations by him, will bind the company. In this State, however, the decisions are uniform that notice to the agent, at the time of the application for the insurance, of facts material to the risk, is notice to the insurer, and will prevent it from insisting upon a forfeiture for causes within the knowledge of the agent," citing *Atlantic Ins. Co.* v. *Wright*, 22 Ill. 462, and *Farmers and Merchants' Ins. Co.* v. *Chesnut*, 50 id. 111. Also, in the same case it was said (p. 524): "The stipulation in the policy that the waiver could be made only by indorsement upon the policy by the general agent at Chicago was inserted for the benefit of the insurer, and, like any other clause or condition of the policy, might be waived by the company." See, also, *Terry* v. *Provident Fund Society*, 41 N. E. Rep. 18; 13 Ind. 1.

We now come to the third contention of appellant: that the agent, in the absence of express authority, could not accept anything but cash in payment of the premium, or any part thereof. It will be remembered that the premium in this case amounted to the sum of $63.70. Of this amount Ballance was entitled to retain, as his commission, seventy or seventy-five per cent, which would leave less than $20 going to the company. Ballance received $25 in cash,—enough to pay the company the amount it was entitled to receive and $5 in addition. The question then presented is, whether Ballance had the right to receive of the insured the amount which was going to him

in anything but money. The policy contained this provision: "This policy shall not take effect until delivered and the first premium thereon paid during the lifetime and good health of the insured." There are authorities which hold that an agent cannot accept the premium which the company is entitled to receive, in anything but cash; but there are other authorities holding that a general agent may give credit and accept the note of the insured in lieu of cash, even when the policy provides for a cash payment. Mechem on Agency says (sec. 931, div. 1): "The insurance agent, as thus distinguished from the broker, is ordinarily held to be a general agent of the company. As such general agent it is held that he may waive forfeitures and conditions in the policy, notwithstanding a provision therein that no agent has such power; that he may waive pre-payment of the premium although the policy provides that it shall not take effect until the premium is paid." May on Insurance (vol. 2, sec. 360*b*) says: "An agent authorized to take and approve risks and to insure may allow credit. A general agent may waive the condition as to the payment of the first premium and give credit, even though the policy declares that the contract cannot be modified except by writing signed by the president or secretary." *Terry* v. *Provident Fund Society, supra,* is also a case in point. There the policy contained, in substance, the same conditions as here. One Carpenter (who was not a regular agent of the company) solicited the insurance. The policy was issued by the company and sent to an agent, who delivered it to Carpenter to deliver to the insured and collect the premium. Carpenter delivered the policy, collected $2.50 (one-half the premium) in cash and gave credit for $2.50, which was his commission. The cash premium failed to reach the company and it canceled the policy, but an accident having occurred the company was held liable. In *Lycoming Ins. Co.* v. *Ward,* 90 Ill. 545, where the agent accepted a part of the premium in goods as a part

of his commission, it was held the payment was binding on the company. Here Ballance was authorized to solicit the insurance from Schlink, and although the policy required the premium to be paid in cash, Ballance had the right, so far as his commission was concerned, to waive the policy and accept his commission in property, if he saw proper to do so.

We think the ruling of the court on the instructions was substantially correct.

After the death of the assured it appears that Ballance wrote a letter to the State agent, Pendergast, which was read in evidence by appellee. Pendergast wrote a letter in reply, which the court refused to admit in evidence, and this ruling is relied upon as error. At the time this letter was written the assured was dead and the rights and obligations of the parties under the policy had become fixed, and anything the State agent may have said in the letter could have had no bearing whatever on the rights of the parties. For this reason, if for no other, the court properly ruled that the letter was not competent evidence.

We think the judgment of the Appellate Court was right, and it will be affirmed.         *Judgment affirmed.*