Elbert James and Flossie James, Appellants, v. Metropolitan Life Insurance Company, Appellee.

Term No. 47F2.

Opinion filed April 23, 1947.

Released for publication June 2, 1947.

MORRIS B. CHAPMAN, of Granite City, for appellants.

KRAMER, CAMPBELL, COSTELLO & WIECHERT and JOHN C. ROBERTS, all of East St. Louis, for appellee.

MR. JUSTICE BARTLEY delivered the opinion of the court.

Plaintiffs sued the defendant insurance company on its policy of insurance and what is termed a supplementary contract attached to and made a part of the policy issued on the life of Raymond E. James. The policy on the life of the insured was in the sum of $1,000; the supplementary contract provided that the defendant should pay to the beneficiaries, the plaintiffs, in addition to the sum provided in the policy, another $1,000 in the event of the death of the insured as the result directly and independently of all other causes, of bodily injuries sustained solely through external, violent and accidental means, with certain provisions, excluding liability under various conditions. The $1,000 on the policy on the life of the insured was paid, but the defendant refused to pay the $1,000 claimed under the supplementary contract because it

contended that there was no liability under the terms of this supplementary contract by reason of certain provisions therein which we shall now note.

In the second paragraph of the supplementary contract, after providing for payment because of violent and accidental means, it is stated: "provided . . . that death shall not have occurred . . . while the insured is in the Military or Naval Service in time of war." Later on in the supplementary contract is the following paragraph: "The insurance under this supplementary contract shall be suspended . . . while the insured is in the Military or Naval Service in the time of war, in which event that portion of the additional premium received by the company but unearned during the period of such suspense shall be refunded."

The consideration for the supplementary contract was "TEN cents, payable MTHLY as an additional premium herefor." The policy of insurance and supplementary contract both bear the date of March 1, 1941. The insured at that time was seventeen years of age. The premiums on the policy and supplementary contract were all paid by the plaintiff, Flossie James, the mother of the insured; the other plaintiff, Elbert James, being the father of the insured. The insured was inducted into the Army on March 15, 1943 and continuously served therein during the late war until April 2, 1945 when he met his death by accident in a motor vehicle collision at an intersection while on a military pass and in the service of the United States in Belgium.

The evidence shows that during all the time the insured was in the service, the agent of the defendant, with full knowledge that such insured was in the Armed Forces of the United States, continued to collect the premiums due on the policy of the insured and supplementary contract in question, until the time of death of the insured.

The plaintiffs contend first; that there was a waiver of the provision of the supplementary contract suspending the double indemnity during the period the insured was in the military service in the time of war, by the continued collection and acceptance of premiums after the company had knowledge through its agent of the insured's military status, and secondly; that before a provision suspending or revoking the double indemnity contract during the period the insured is in the military service during the time of war is valid, it must be shown that there was a relationship between the death of the insured and his service.

The defendant contends that the suspension clause is a status clause as distinguished from a result clause or activity clause and that the mere being in the military service in time of war is sufficient to obviate the policy; that the provision cannot be waived by any agent of the company and that the agent who had knowledge of the fact of the insured's being in military service in time of war was only a soliciting agent and his knowledge, therefore, could not be charged to the defendant.

Should the court conclude that the provisions in question, attempting to avoid liability on the part of the defendant for the accidental death of the insured while he was in the military service in time of war, were such that the defendant, because of the knowledge of its agent, waived them, it will be unnecessary for this court to determine whether the provisions in question here come within the so-called status or result or activity clauses.

The law in Illinois is well settled that general agents of insurance companies may waive any conditions providing for the avoidance or a forfeiture of policies by the violation of their terms, and an agent of the company collecting the premiums due may waive them after knowledge on the part of such an agent that

the breach of the conditions is the cause of the avoidance or forfeiture. (*Phenix Ins. Co. v. Hart,* 149 Ill. 513; *Manufacturers & Merchants Ins. Co. v. Armstrong,* 145 Ill. 469; *Germania Life Ins. Co. v. Koehler,* 168 Ill. 293; *Henry v. North American Union,* 222 Ill. App. 279; *Walker v. American Order of Foresters,* 162 Ill. App. 30.)

In 29 Am. Jur., par. 800, it is said: "No matter how stringent the condition upon which the continued enforceability of a contract of insurance is made to depend, the insurance company is under no obligation to enforce it; and it may waive a provision after, as well as before, a forfeiture has occurred. An insurance company, no less than any other natural or artificial person, is bound by the principle that no one shall be permitted to deny that he intended the natural consequences of his acts when he has induced others to rely upon them." Again in par. 801, it is said: "In general, the doctrines of waiver and estoppel extend to practically every ground upon which an insurer may deny liability."

The evidence shows as hereinbefore stated, that during all the time the insured was in war service, the agent of the defendant continued to collect the premiums on the policy and supplementary contract once each month and that during this time, the mother of the insured, plaintiff Flossie James, paid the premiums and from time to time discussed with the agent the fact of her son being in military service; when he started; where he was, including the time when he left the United States and when he was sent to France from England. This agent had been such for at least 14 years. His duties included soliciting of insurance, taking of applications, submission of applications to the district office, receiving and delivering the policies to the insured when issued, countersigning of the same when delivered and the collection of the premiums on the policy. This constituted him a general agent of the

company whose acts were binding upon it and who had power to waive conditions of the policy and the supplementary agreement in question. (*John Hancock Mut. Life Ins. Co. v. Schlink*, 175 Ill. 284; *Niemann v. Security Benefit Ass'n*, 350 Ill. 308.)

We come now directly to the question as to whether the provisions in the supplementary contract in question, as related to the principles of law heretofore discussed, are such that they could be waived. The law is clear that contracts of insurance, being entirely of the insurer's own making, are construed strictly against the insurer and liberally in favor of the insured, and where two interpretations, equally reasonable, are possible, that construction should be adopted which will enable the beneficiary to recover. (*Zeman v. North American Union*, 263 Ill. 304; *Terwilliger v. National Masonic Accident Ass'n*, 197 Ill. 9.) Where the language of an insurance contract as a whole is susceptible to more than one meaning, the court will give it that meaning which is most favorable to the insured. (*Seitzinger v. Modern Woodmen of America*, 106 Ill. App. 449.) Where a policy of insurance contains inconsistent, conflicting and ambiguous provisions, the provision affording the most protection to the insured will control. (*Stramaglia v. Conservative Life Ins. Co. of Wheeling, W. Va.*, 319 Ill. App. 20; *Lenkutis v. New York Life Ins. Co.*, 374 Ill. 136.)

The pertinent portions of the supplementary contract in question are as follows:

"IN CONSIDERATION of the application for this Contract, as contained in the application for said Policy, the latter being the basis for the issuance hereof, and in consideration of . . . dollars and TEN cents, payable MTHLY as an additional premium hereof, such payment being simultaneous with, and under the same conditions as, the regular premium under said POLICY, except as hereinafter provided,

"HEREBY AGREES to pay to the beneficiary or beneficiaries of record under said Policy, in addition to the amount payable according to the terms of said Policy, the sum of 1,000 dollars, upon receipt, at the Home Office of the Company in the City of New York, of due proof of the death of the insured, as the result, directly and independently of all other causes, of bodily injuries sustained solely through external, violent and accidental means, provided (1) that such death shall have occurred while said Policy and this Supplementary Contract are in full force, and prior to the anniversary date of said Policy nearest to the sixty-fifth birthday of the insured; and (2) that all premiums under said Policy and this Supplementary Contract shall have been duly paid; and (3) that said Policy shall not then be in force by virtue of any non-forfeiture provisions thereof; and (4) that death shall have ensued within ninety days from the date of such injuries; and (5) that death shall not have occurred as the result of self-destruction while sane or insane, or as the result or by the contribution, directly or indirectly, of disease or of bodily or mental infirmity; and (6) that death shall not have occurred as a result, directly or indirectly, of travel or flight in any species of aircraft, except as a fare-paying passenger on a licensed aircraft piloted by a licensed passenger pilot on a scheduled air service regularly offered between specified airports; and (7) that death shall not have occurred while or as a result, directly or indirectly, of participating in or attempting to commit an assault or a felony, nor while the insured is in the Military or Naval Service in time of war; and (8) that death shall not have occurred as a result, directly or indirectly, of any poison, gas, or fumes, voluntarily or involuntarily, accidentally or otherwise, taken, administered, absorbed or inhaled.

"The Company shall have the right and opportunity to examine the body of the insured, and, upon request made to the claimant hereunder within thirty days

after receipt at its Home Office of written notice of claim hereunder, to make an autopsy, either before or after burial, unless forbidden by law. . . .

"The insurance under this Supplementary Contract shall be suspended while the insured is insane, or while the insured is in the Military or Naval Service in time of war, in which event that portion of the additional premium received by the Company but unearned during the period of such suspense shall be refunded."

▇ From these various provisions of the supplementary contract it appears first, that it insured for death by violent and accidental means with certain exclusions, including that death shall not have occurred by self-destruction while sane or insane, and that death shall not have occurred while the insured is in the Military or Naval service in the time of war. The supplementary contract later on then provides that it shall be suspended while the insured is insane or while the insured is in the Military or Naval service in time of war, in which event that portion of the additional premium received by the company, but unearned during the period of such suspense, shall be refunded. These provisions are entirely inconsistent in that in one instance it contemplates the continuance of the supplementary contract in force, and in the other, contemplates the suspension of the contract in its entirety and the return of the unearned premium.

It will be noted that the "unearned premium" is in the singular, referring to the one monthly premium payable by the terms of the contract. In other words, the contract contemplated, according to the suspension provision, that if the insured entered the military or naval service in any given month, the proportion of the premium unearned for that month should be returned and no further premiums should be collected. If anything further is needed to show the clarity of this conclusion, it further provided, as above stated, that the supplementary contract shall be cancelled or

otherwise terminated and the additional premium shall no longer be payable.

Applying the principles of law hereinbefore referred to in this opinion, that contracts of insurance in event of ambiguity and inconsistency are to be construed most strongly against the insurer and in favor of the insured, to the case in hand here, we conclude that as related to military or naval service in time of war, it means that it was a contract giving the right of suspension of the contract to the insurer in the event it so desired.

To suspend is to end or terminate, though ordinarily temporarily, or subject to reinstatement. To render void or to forfeit is in effect to end or terminate, though ordinarily permanently. As indicated in the cases hereinbefore cited, courts of Illinois are committed to the doctrine that conditions providing for the avoidance of policies and for their forfeiture may be waived by the insurance company. We can see no difference in principle between the ending or terminating of a policy whether permanently or temporarily within the doctrine of waiver. Whether a permanent or temporary suspension, the provisions are in the policy for the benefit of the insurer, and if the insurer sees fit to waive such provisions, it should be permitted and required to do so.

In this case, just as in so-called forfeiture cases, it was within the power of the company to have suspended the policy by the return of the portion of the premium unearned, paid for the month in which the insured entered the military service in time of war, and to have refused to accept any additional premiums. Notwithstanding this, and with full knowledge of the fact, as set forth hereinbefore, in detail, the general agent of the defendant collected and accepted premiums from month to month from the mother of the insured. If the supplementary contract was suspended, for what were the premiums collected? If not

suspended, for what were the premiums collected? We conclude that the defendant waived the provisions of the supplementary contract which it is contended voided it.

The jury, without any evidence being offered in behalf of the defendant, returned a verdict in favor of the plaintiffs and assessed defendant's damages at $1,000 in accordance with the terms of the supplementary contract. The trial court allowed defendant's motion for a judgment in its favor, notwithstanding the verdict of the jury and defendant's motion to set aside the verdict, and granted the defendant a new trial in accordance with Rule 22 of the Rules of Practice and Procedure of the Supreme Court, and entered judgment against the plaintiffs and in favor of the defendant. The ruling of the circuit court of Madison county and the judgment is reversed and set aside, and judgment is here entered in favor of the plaintiffs and against the defendant for $1,000 and costs of suit.

*Judgment reversed.*

CULBERTSON and SMITH, JJ., concur.