HARTFORD ACCIDENT AND INDEM-NITY COMPANY and Hartford Fire Insurance Company, Plaintiffs-Appellees,

v.

NORTHWEST NATIONAL BANK OF CHICAGO, Defendant-Appellant.

HARTFORD ACCIDENT AND INDEM-NITY COMPANY and Hartford Fire Insurance Company, Plaintiffs-Appellees,

v.

Mathew POBOG, Defendant-Appellant.

HARTFORD ACCIDENT AND INDEM-NITY COMPANY and Hartford Fire Insurance Company, Plaintiffs-Appellees,

v.

Frank JASINSKI and Edward Coyle, Defendants-Appellants.

Nos. 11503–11505.

United States Court of Appeals
Seventh Circuit.

Dec. 20, 1955.

Stephen A. Milwid, Maurice R. Kraines, Arthur De Bofsky, Bernard W. Mages, Irving S. Abrams, Cushman B. Bissell, Lord, Bissell & Brook, Chicago, Ill., for appellant, Northwest National Bank of Chicago.

Oswell G. Treadway, Joseph H. Hinshaw, John M. Moelmann, Chicago, Ill., for appellees.

Before MAJOR, FINNEGAN and SWAIM, Circuit Judges.

MAJOR, Circuit Judge.

Plaintiffs Hartford Accident and Indemnity Company and Hartford Fire Insurance Company, both corporations and each in the business of writing liability insurance, brought this action against Frank Jasinski, Mathew Pobog, Northwest National Bank of Chicago, a corporation (hereinafter referred to as the Bank), Edward Coyle and Great American Insurance Company, a corporation, under the Federal Declaratory Judgment Act, Title 28 U.S.C.A. § 2201, for judgment declaring null and void from its inception a combination automobile policy No. CH–486719, issued by plaintiffs to the defendant Jasinski, effective June 2, 1952, covering an automobile of which the defendant Pobog was the owner. As incidental relief, plaintiff Hartford Fire Insurance Company prayed that the defendant Bank be required to repay the sum of $405.00, which had been paid to it in accordance with the loss payable clause endorsement attached to said policy, as damages to the automobile, under the mistaken belief that it was owned by Jasinski.

Pobog while driving the automobile described in the policy collided with another motor vehicle driven and owned by the defendant Coyle, in which collision both automobiles were damaged and Coyle sustained personal injuries. Thereafter, Coyle commenced an action in the State Court of Illinois against Pobog and Jasinski, to recover damages both on account of his personal injuries and damages to his car. Coyle was made a party-defendant in the instant case on the premise that he would be entitled to have any judgment which he might obtain in the State Court paid by the plaintiff insurers in accordance with the terms of the policy which they had issued, and for the further reason that Pobog and Jasinski had demanded of plaintiffs that they furnish a defense to the action brought by Coyle in the State Court. During the course of the proceedings, Great American Insurance Company was dismissed as a party-defendant. Jurisdiction was asserted because of the admitted diversity of citizenship as between the plaintiffs and the defendants, and all defendants other than the Bank admit that the requisite amount was involved.

The complaint among other things alleged that Pobog, on or about May 1, 1952, purchased the insured car on a conditional sales contract which was turned over to and became the property of the Bank; that as required by said contract, insurance was procured from the Providence Washington Insurance Company, which issued its policy to Pobog, and that Providence subsequently cancelled said policy as of the date of issuance. Thereupon, so it was alleged, Pobog, Jasinski and the Bank represented to plaintiffs that Jasinski was the owner of the car, and as a result of such representations plaintiffs issued their automobile combination policy in suit, naming Jasinski as the insured, with a loss payable clause endorsement thereon naming the Bank as the lienholder, by which endorsement any loss or damage under the policy was payable in accordance with the Bank's interest. The complaint alleged that the representations made by Pobog, Jasinski and the Bank to plaintiffs that Jasinski was the owner of the automobile "were false, fraudulent and untrue and known to be false, fraudulent and untrue by the said defendants, and each of them, and were not known to be false, fraudulent and untrue by the plaintiffs, or either of them" at the time of the issuance of the policy, and that absent such false and fraudulent representations plaintiffs would not have issued their policy.

Numerous motions were filed, including that by the Bank, attacking the court's jurisdiction of the subject matter as to it, which were overruled. All defendants filed their individual answers to the complaint other than the defendant Great American Insurance Company and as to it, as we have noted, the com-

plaint was dismissed. In addition, Pobog filed a counterclaim alleging that he had borrowed money from the Bank not only to purchase the car but also to buy insurance; that he had never represented to plaintiffs or anyone at any time that any person other than he had owned the car; that Harvey E. Bell who procured the policy was plaintiffs' agent; that Bell had full knowledge of Pobog's ownership, and that Bell's knowledge was imputable to plaintiffs. Alternatively, Pobog asserted that the Bank should be declared liable to him as an insurer in the event that it be determined that the Bank had misrepresented the ownership of the car. This alternative prayer by Pobog was stricken on the Bank's motion, on the ground that it raised questions not germane to the main issue.

The Bank, as well as Pobog and Jasinski, denied that they or any of them represented to plaintiffs that Jasinski was the owner of the car, and they each further denied that plaintiffs relied upon such representations by the defendants in the issuance of the policy. In addition, the Bank set forth two affirmative defenses: (1) that Bell who had written and countersigned the policy in suit was plaintiffs' agent and had known since May 1, 1952 (the date of the purchase of the car by Pobog) that Jasinski was a cosigner on the conditional sales contract and as such cosigner had an insurable interest in the automobile insured by the plaintiffs, and further, that Bell at all times had knowledge of the true status of the ownership of the car insured by plaintiffs and that they were thereby estopped to deny the validity of the contract (policy of insurance), and (2) that plaintiffs on or about May 15, 1953, adjusted and settled a claim for damages to the insured car in the amount of $405.-00, and issued its draft payable to the Bank in said amount, all with the previous knowledge as to the true ownership of the car, and that as a result of such transaction plaintiffs were estopped from claiming as against the Bank that the policy was void and unenforceable.

Depositions of the defendant Pobog and Jasinski, of Harry P. Omundsen (loan officer of the Bank) and of Bell, who had procured and countersigned the policy, were taken. Interrogatories propounded by the Bank to plaintiffs and the answers thereto, as well as interrogatories propounded by plaintiffs to the Bank and the answers thereto, were also filed.

A motion for summary judgment was filed by Pobog, supported by a "certificate" of his attorney setting forth his version as to the facts shown by the pleadings, admissions, answers to interrogatories and depositions. Plaintiffs filed objections to the motion by Pobog for summary judgment. Thereafter, plaintiffs filed their motion for summary judgment and in support thereof adopted the depositions of Pobog, Jasinski, Bell and Omundsen, together with the exhibits thereto attached, the answers to the interrogatories by the various parties and the affidavits of two of their officials, Rutherford and Healy, together with a copy of the agency agreement entered into between plaintiffs and Bell. In connection therewith, plaintiffs tendered in open court the sum of $142.88, representing the premium received for the policy in controversy, to be returned to such of the defendants as the court might direct. A hearing was had upon the respective motions for summary judgment and, at the request of counsel for Pobog, Bell further testified before the court.

The court, upon submission of briefs by the respective parties, took the motions under advisement and, on February 18, 1955, entered its findings of fact, conclusions of law and judgment. It adjudged that the policy was null and void, and of no force and effect from the date of its inception, and that the defendants had no rights or benefits thereunder; that the Bank repay to the plaintiff Hartford Fire Insurance Company the sum of $405.00, which the said plaintiff paid to the Bank to cover the cost of repairs of the automobile described in the policy. Also, the defendants were enjoined from

making or prosecuting any claim against the plaintiffs or either of them by reason of the issuance of said policy. The judgment further recited that the sum of $142.88, received by plaintiffs in payment of premium for the policy, had been included in the amount of the loan made by the Bank to Pobog, which said loan had been paid by Pobog in full, and that the amount of said premium tendered in court by plaintiffs be paid to Pobog. Thereafter, the Bank and Pobog filed motions to set aside or to alter or amend the said judgment, which motions were denied April 19, 1955.

From such judgment, as well as from the order denying motions to vacate and set aside the judgment, the defendant Bank appeals in No. 11503, the defendant Pobog in No. 11504, and the defendants Jasinski and Coyle in No. 11505. Separate briefs have been filed in this court by the Bank and Pobog, which Jasinski and Coyle have adopted.

The issues argued in this court, as might be expected of a situation so complicated in its nature, are numerous. The Bank in its brief enumerates the contested issues in substance as follows: (1) that summary judgment in favor of the plaintiffs was erroneous and contrary to the provisions of Rule 56(c) of the Rules of Civil Procedure, 28 U.S.C.A., because genuine issues as to material facts were involved; (2) that the court erred in finding and concluding that Bell was acting as agent for the Bank and not as agent for plaintiffs and that knowledge on his part as to the ownership of the car was not imputable to plaintiffs; (3) that the court erred in its refusal to enter summary judgment in favor of Pobog inasmuch as the plaintiffs conceded all of the material facts asserted in support of Pobog's motion for such a judgment; (4) that the court erred in finding that there was a misrepresentation by the defendants or any of them materially affecting the risk under the policy issued by plaintiffs, and (5) that the court erred in its denial of the Bank's motion to dismiss as to it for lack of jurisdiction. The contested issues as stated in Pobog's brief are substantially the same as those stated by the Bank insofar as they relate to him, that is, that there were controverted issues of material facts which preclude a summary judgment in favor of plaintiffs and that the uncontradicted facts were such as to require a summary judgment in favor of Pobog. In addition, Pobog contends that his alternative claim for relief against the Bank should have been entertained. Plaintiffs' brief contains no statement of contested issues. It is fair to state, however, that they take direct issue with every contention advanced by the defendants which would or might affect the propriety of the judgment under review.

There appears to be no dispute as to when a summary judgment may properly be entered under Rule 56 of the Federal Rules of Civil Procedure. We see no point, therefore, in discussing the numerous cases called to our attention on this phase of the case. As the rule states, such a judgment is proper only where "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law * * *." Hazeltine Research, Inc., v. General Electric Co., 7 Cir., 183 F.2d 3, 7; Mitchell v. Pilgrim Holiness Church Corp., 7 Cir., 210 F.2d 879, 881. The fact that opposing parties have moved for summary judgment is without significance. Begnaud v. White, 6 Cir., 170 F.2d 323, 327; F. A. R. Liquidating Corp. v. Brownell, 3 Cir., 209 F.2d 375, 380. Summary judgment proceedings cannot be invoked to deprive litigants of their right to trial by jury where there are genuine issues as to material facts to try. Preston v. Aetna Life Ins. Co., 7 Cir., 174 F.2d 10, 14.

In the beginning, we think it important to consider certain issues of law which vitally affect the decision of the District Court as embodied in its judgment. Referring to the time of the cancellation of Pobog's policy issued by the Providence Washington Insurance Company, the court found:

"Shortly thereafter, the defendant, Northwest National Bank of

Chicago, again called its said broker, the said Harvey E. Bell, advised him that the said automobile had been or would be transferred to the defendant, Frank Jasinski, and ordered a new policy to be written, naming the defendant, Frank Jasinski, as insured therein, which said order, the said Harvey E. Bell placed with the plaintiffs, Hartford Accident and Indemnity Company, a corporation, and Hartford Fire Insurance Company, a corporation, in response to which said order the plaintiffs issued its policy No. CH486719, naming the defendant, Frank Jasinski, as the insured therein, and describing him therein, except with respect to bailment lease, conditional sale, mortgage or other incumbrance as the sole owner thereof, said policy also bearing a loss payable endorsement running to the defendant, Northwest National Bank of Chicago, and for which the plaintiffs were paid a premium in the sum of One hundred forty-two and 88/100 dollars ($142.88). The transfer, as represented by the defendant, Northwest National Bank of Chicago, was never effected, and the defendant, Frank Jasinski, never acquired any right, title or interest in or to the said automobile, of which facts the defendant, Northwest National Bank of Chicago, never advised the said Harvey E. Bell."

Also, the court concluded as a matter of law:

"The said Harvey E. Bell, in placing the order for the said policy No. CH486719 with the plaintiffs, Hartford Accident and Indemnity Company and Hartford Fire Insurance Company, was acting solely as broker for and agent of the defendant, Northwest National Bank of Chicago, and not as agent for the plaintiffs under his agency agreement with the plaintiff, Hartford Accident and Indemnity Company."

We think there resides in the finding and conclusion thus quoted, particularly the latter, the heart of this controversy. Plaintiffs appear to regard lightly the importance of this conclusion and suggest that the appeal is from the judgment, not from the findings and conclusions. Even so, the judgment in favor of the plaintiffs rests upon the findings of fact as made by the court and upon its conclusions of law.

■ Bell's denial that he was a general agent for plaintiffs or that he called himself a broker and was referred to as such is of little importance, certainly it is not controlling. As was stated in Tri-City Transportation Company, Inc., etc. v. Bituminous Casualty Corporation, 311 Ill.App. 610, 615, 37 N.E.2d 441, 443:

"It is established that whether a party acts as a broker or agent is not determined by what such party is called, but is to be determined from what he does—that is, that his acts determine whether he is an agent or a broker."

Plaintiffs attached to their motion for summary judgment a copy of the agency agreement signed by Hartford Accident and Indemnity Company and by Harvey E. Bell, agent, by which authority was granted to Bell as agent "to solicit and submit applications * * *; to issue and deliver policies, bonds, certificates, endorsements and binders which the Company may, from time to time, authorize to be issued and delivered; to collect and receipt for premiums thereon or therefor; to cancel such policies * * * in the discretion of the Agent where cancellation is legally possible; and to retain out of premiums collected and paid over to the Company in accordance herewith, as full compensation on business placed with the Company * * *." The agreement further provided, among other things, for the rendition of a monthly account by the agent, showing the amount due the company, for the furnishing of supplies by the company to remain as their property and to be returned by the agent to the company upon demand. Further, the company reserved the right to cancel any contract of insurance upon notice to the agent.

Moreover, Bell testified that this agency agreement had been in effect for some six years; that he had on behalf of Hartford solicited insurance and taken applications therefor from individuals and corporations; that such applications were sent to the company and that policies issued thereon were mailed to him, which he countersigned as agent for plaintiffs by writing his name on a space provided therefor; that he collected premiums, issued receipts therefor in the company's name, placed binders thereon, had the authority to place insurance effective immediately, and that on some occasions such insurance was honored by the company by the payment of losses sustained prior to the issuance of the policy. The name "Hartford Agency" appeared on the door of his office. On February 7, 1953, Pobog went to the office of Bell and reported the collision between his car and that of Coyle, which had occurred on the day previous. Thereupon, Bell in his own handwriting executed a "Report of Loss" upon a form furnished by plaintiffs, containing information given him by Pobog. The report was signed by the latter and sent by Bell to plaintiffs.

In our judgment, contrary to the conclusion of the trial court, Bell was, under the related circumstances which are not in dispute, as a matter of law a general agent of plaintiffs. Such being the case, any knowledge as to ownership of the car, possessed by Bell at the time of the issuance of the policy in suit, was imputable to plaintiffs. This view, so we think, is supported by both state and federal decisions.

In James v. Metropolitan Life Insurance Company, 331 Ill.App. 285, 73 N.E. 2d 140, the court had before it the question as to whether the agent for the insurance company was a "soliciting agent" whose acts and knowledge could not be charged to the insurer, or whether he was a general agent whose acts and knowledge would be imputable to the insurer. The court in holding that he was a general agent defined such term as follows 331 Ill.App. at page 290, 73 N.E.2d at page 143:

"This agent had been such for at least 14 years. His duties included soliciting of insurance, taking of applications, submission of applications to the district office, receiving and delivering the policies to the insured when issued, countersigning of the same when delivered and the collection of the premiums on the policy. This constituted him a general agent of the company whose acts were binding upon it and who had power to waive conditions of the policy and the supplementary agreement in question."

In support of this conclusion the court cites John Hancock Mutual Life Insurance Company v. Schlink, 175 Ill. 284, 51 N.E. 795, and Niemann v. Security Benefit Association, 350 Ill. 308, 183 N.E. 223. In the Hancock case it was contended by the insurance company that the person who procured the insurance was not its agent but that he was the agent of the insured. (This is similar to the contention in the instant case that Bell was the agent or broker for the Bank and not the general agent for plaintiffs.) The court rejected this theory and in so doing stated 175 Ill. at page 289, 51 N. E. at page 796:

"As to the first proposition, by the terms of the contract under which Ballance was appointed he was authorized to procure applications for policies of insurance upon the lives of individuals, and to collect premiums, in accordance with the rules of the company. He was entrusted with the power of delivering policies for the company. Clothed, therefore, with the power of soliciting insurance, delivering policies, and collecting premiums, Ballance was the agent of the insurance company, and not the agent of Pendergast."

In the Niemann case, 350 Ill. 308, 183 N.E. 223, the court held that false statements by the insured were not grounds for voiding the policy where the general

agent of the insurer had knowledge of their falsity. The court stated 350 Ill. at page 316, 183 N.E. at page 227:

"A general agent clothed with power to solicit insurance, receive the application and forward it to the company, receive and deliver the policy and collect the premium, has power to waive a condition of the policy notwithstanding that power is negatived by provisions in the policy and his contract of employment."

In Reinhardt v. Security Insurance Company, 321 Ill.App. 324, 53 N.E.2d 13, the insurer sought to avoid liability on the grounds that its policy contained a provision that the insured building should be used only for residential purposes. Instead, it was occupied by a tavern when destroyed by fire. The agency which wrote the policy had knowledge that the insured building was occupied as a tavern. The issues before the court were whether the person who solicited the insurance was the general agent of the insurer and, if so, whether his knowledge as to use was attributable to the insurer. The court in deciding against the insurer stated 321 Ill.App. at page 331, 53 N.E.2d at page 17:

"Agents of an insurance company who are authorized to solicit and sell insurance, deliver policies and collect premiums are general agents of the company, and as such have power to waive conditions in an insurance policy and notice to them is notice to the company."

A case of similar purport is Beddow v. Hicks, 303 Ill.App. 247, 257, 25 N.E. 2d 93, 97, where the court stated:

"An insurance company that knowingly takes a premium for a policy under conditions that would render it invalid, will not be permitted to say that it is not a binding contract for that reason. In all such cases the company will be regarded as having the same knowledge of the conditions and situation of the property as is possessed by the agent

transacting the business for it. [Citing Illinois cases.]"

In Scott v. Bankers' Auto Insurance Association, 224 Ill.App. 606, 610, the court quoted from an Illinois Supreme Court decision, Phenix Ins. Co. v. Hart, 149 Ill. 513, 522, 36 N.E. 990, 993, as follows:

"'In this state, however, the decisions are uniform that notice to the agent, at the time of the application for the insurance, of facts material to the risk, is notice to the insurer, and will prevent it from insisting upon a forfeiture for causes within the knowledge of the agent.'"

The reasoning of this court in the recent case of General Accident Fire and Life Assurance Corporation v. Browne, etc., 217 F.2d 418, is also fatal to the contention that Bell was agent of the Bank and not of plaintiffs. In that case, it was contended that the Pierce Agency which had procured the insurance for Browne and accepted the premium therefor was his agent and not that of the insurer. Relative thereto, the court stated at page 422:

"In acceding to Browne's request, Pierce was serving the needs of a customer. It was not acting as an agent for the customer. It was acting as agent for plaintiff, the insurer, whose policy it procured for Browne. In looking after Browne's automobile insurance needs, it was serving a customer in the same manner as an automobile service station takes care of the needs of those who come to buy gasoline, oil, tires, etc. Mere attention to the needs of a customer does not make a business man the agent of a customer. The relation between Browne and Pierce lacked nearly all of the following familiar essentials of a real agency; a hiring by the principal, a right to discharge the agent, payment by the principal of compensation to the agent; and supervisory power in the principal over the manner in which

the agent performs his duties. Pierce looked exclusively to the insurer for compensation for its services in procuring insurance business for plaintiff. Plaintiff undertook to set forth the correlative rights and duties of itself and Pierce in a comprehensive 'Agency Agreement,' which is in evidence."

Thus, there emerge from these decisions three pertinent propositions of law, (1) Bell was the general agent of plaintiffs, (2) Bell was not the agent either of the Bank or Pobog and (3) any knowledge possessed by Bell at the time of the issuance of the policy in controversy relative to the ownership of the car was imputable to plaintiffs. The question as to whether Bell possessed such knowledge was a material factual issue. The trial court made no finding on this point, obviously for the reason that it was regarded as immaterial in view of the finding and conclusion that Bell was the agent of the Bank and not that of plaintiffs.

■ However, this question as to knowledge on the part of Bell, while primarily presenting an issue of fact, might become one of law if the evidentiary facts bearing thereon were without dispute. We have thus carefully examined the record for the purpose of ascertaining if there is any dispute as to the evidentiary facts relevant to this material issue, from which we conclude that while the circumstances strongly indicate that Bell at the time of the issuance of the policy had knowledge that Pobog and not Jasinski was the owner of the car, we cannot say that the issue is without dispute. The fact is, as we have indicated, the conclusion which the court reached and the theory on which the case was presented by plaintiffs made the issue of knowledge relatively unimportant. In any event, we are of the view that the issue as to knowledge on the part of Bell should first be considered and decided by the trial court.

We have not overlooked the numerous cases cited and relied upon by plaintiffs which hold that a misrepresentation as to ownership is material and will avoid the policy. Typical of such cases are Patterson v. Durand Farmers Mutual Fire Insurance Company, 303 Ill.App. 128, 138, 24 N.E.2d 740; Didlake v. Standard Ins. Co., 10 Cir., 195 F.2d 247, 251, 33 A.L.R. 2d 941; Bettinger v. Northwestern Nat. Cas. Co., 8 Cir., 213 F.2d 200, 206. These cases, however, and others of their class, like the theory on which plaintiffs attempt to sustain the summary judgment in their favor, are clearly distinguishable on the grounds that there was involved no question of the effect to be given a misrepresentation made to the general agent of an insurer of which such agent had knowledge. The rule announced in such cases, therefore, is not inconsistent with that followed in the cases which we have heretofore cited and which hold that knowledge of misrepresentation on the part of a general agent is imputable to the insurer and cannot be utilized by it to avoid the policy.

Moreover, it has been held in Illinois that an insured's false representation of sole ownership of an automobile is not a misrepresentation materially affecting a risk assumed by the insurer with respect to third persons (such as Coyle in the instant case), and does not avoid the policy as to such person. Mid-States Insurance Company v. Brandon 340 Ill.App. 470, 92 N.E.2d 540. See also the decision by this court in Hawkeye-Security Ins. Co. v. Presbitero & Sons, Inc., 209 F.2d 281, 283–284. Plaintiffs contend that the holding in the Brandon case is not the rule of Illinois, that it has been overruled in later cases. We need not resolve any doubt on this score, however, because the conclusion which we have stated is not dependent on the rule announced in the Brandon case.

■ In our view, there was another material issue of fact which would have to be resolved in plaintiffs' favor before they would be entitled to the relief sought, and this irrespective of whether their agent Bell had knowledge of the alleged false representations as to owner-

ship. That issue is whether the alleged misrepresentation was such as is cognizable in law as fraudulent. As heretofore noted, the misrepresentation alleged in the complaint was that the defendants Pobog, Jasinski and the Bank represented to plaintiffs that Jasinski "was the owner" of the car, and that it was upon this representation that the policy was issued. There is not a scintilla of evidence, however, that either Pobog or Jasinski made any misrepresentation to Bell as to ownership of the car or in any other respect. In fact, it is undisputed that Pobog did not talk to Bell concerning the issuance of the policy and had no knowledge that the policy had been issued in the name of Jasinski until he reported to Bell the collision of February 6, 1953, which gave rise to this lawsuit. While Jasinski, at the suggestion of Omundsen, called on Bell at the latter's office relative to insurance for Pobog's car, he protested to Bell against issuance of the policy in his name and he, like Pobog, had no knowledge that the policy had been issued in his name until after the Pobog-Coyle collision. Consequently, any misrepresentation relied upon by plaintiffs, and about this there is no dispute, was that made by the Bank which through its officer, Omundsen, called Bell and requested that a policy be issued insuring Pobog's car.

The court did not find, however, that the Bank represented to Bell that Jasinski was the owner of the car, as alleged, but that it advised Bell that the said automobile "had been or would be transferred to the defendant Frank Jasinski." It has been held that a representation made by an applicant for insurance relating to a future act is not such a misrepresentation as will afford the basis for an action to declare the policy void. Keithley v. Mutual Life Insurance Company of New York, 271 Ill. 584, 111 N. E. 503; Couch on Insurance, Vol. 4, Sec. 835, p. 2719. In the Keithley case it is stated 271 Ill. at page 586, 111 N.E. at page 504:

"In order to constitute fraud in law, a representation must be an af-

firmance of fact, and not a mere promise or expression of opinion or intention. A promise to perform an act, though accompanied at the time with an intention not to perform it, is not such a representation as can be made the ground of an action for deceit. [Citing Illinois cases.]"

And on the following page:

"The statement of a thing in the future, to be a fraudulent misrepresentation, must amount to the statement of a fact."

It is pertinent to note that no written application for the policy was made by the Bank or anybody else. All of the evidence relative to the alleged misrepresentation is embodied in a telephone conversation between Omundsen and Bell and there is a conflict between the testimony of these two parties as to what was said. Omundsen categorically denied that he told Bell that Jasinski was the owner of the car, that title had been placed in his name or that it would be. On the other hand, Bell testified at one point that he was told by Omundsen that title had been placed in Jasinski and at another point that Omundsen merely stated that title would be placed in the name of Jasinski. If Omundsen's testimony is accepted, there was no misrepresentation. If it be rejected, however, it would have to be determined which of the versions testified to by Bell was correct. A mere statement by Omundsen that title would be placed in Jasinski would amount to nothing more than a promise or an intention to perform an act in the future and would not constitute a fraudulent representation. On the other hand, if Omundsen falsely stated to Bell as a fact that title had been placed in Jasinski or that Jasinski was the owner of the car, such a statement, assuming that Bell was without knowledge of its falsity, would constitute a fraudulent representation which would avoid the policy as to the Bank.

Assuming, however, that the Bank by its officer, Omundsen, made the false representation to Bell as to owner-

ship of the car which induced the issuance of the policy, and assuming further that Bell was without knowledge of such false representation, another issue of fact emerges insofar as Pobog is concerned. As heretofore noted, there is neither claim nor proof that Pobog made any kind of a representation to Bell relative to the issuance of the policy. All that Pobog had knowledge of was that he was the owner of the car, that he had obtained a loan from the Bank to be used in paying the balance of the purchase price, that the loan included a sum to be used in payment of a premium on a policy of insurance, and that a policy had been issued by Bell as the agent of plaintiffs. Plaintiffs advance the theory that the Bank was the agent of Pobog for the purpose of procuring insurance and that the latter is bound by any misrepresentation made by it. No finding was made on this phase of the case as it apparently was immaterial to the theory on which the case was presented by plaintiffs and decided by the court. Certainly there is no basis for holding as a matter of law that the Bank was the general agent of Pobog. Plaintiffs' contention on this point raises only an issue of fact, which would require a determination from the circumstances attending the relationship between Pobog and the Bank by applying thereto the recognized criteria for making such determination. This issue, on remand, might or might not become material, depending upon the disposition of other factors which we have discussed.

■■■■ As was stated in the beginning, this case presents a complicated and in many respects a confusing situation, and we are not certain that this opinion is as enlightening as it should be. Therefore, a resumé of the conclusions which we have reached may be in order. We hold that it was error to enter a summary judgment in favor of plaintiffs because there were material issues of fact in dispute. We hold that Bell as a matter of law was the general agent of plaintiffs and that any knowledge possessed by him as to ownership of the car was imputable to plaintiffs. We hold

that whether Bell possessed such knowledge presents an issue of fact. We hold that if Bell possessed such knowledge, plaintiffs are entitled to no relief even though the false representation as to ownership was made as alleged. We hold that if Bell was not possessed of such knowledge, an issue of fact emerges as to whether a misrepresentation was made by the Bank and, if so, whether it was such as the law characterizes as fraudulent. We hold in any event that any misrepresentation made by the Bank as to ownership of the car would not be binding upon Pobog in the absence of a determination that the Bank was his agent, with authority, express or implied, to make such misrepresentation.

■■■■ We are of the view that Pobog's motion for summary judgment was properly denied. It is apparent from our previous discussion that there are unresolved material issues of fact which would preclude a summary judgment in his favor. This does not mean, of course, that the court is without power to grant relief to Pobog. We think there is no merit in plaintiffs' contention that no relief could be allowed Pobog because he had not sought a reformation of the policy. True, he did not do so in that express language but in his counterclaim he prayed for a declaratory judgment "That the policies issued by the [plaintiffs] be decreed good, valid and subsisting policies and that this respondent is entitled to all the protections afforded thereby," and "for such other and further relief as might be proper in the premises."

Plaintiffs cite cases which hold that in case of mutual mistake the proper procedure is an action in equity to reform the contract and to enforce the policy as reformed. Beddow v. Hicks, 303 Ill.App. 247, 254, 25 N.E.2d 93; Ladone v. National Casualty Company, 279 Ill.App. 258, 262. Such cases, so we think, are without application. There is involved in this proceeding an issue of fraud, not of mutual mistake. It was Pobog who owned the car and it was his money which plaintiffs accepted in payment of

the premium for insurance thereon. It is for the court to determine whether he is entitled to protection under the policy wrongfully issued, so it is alleged, in the name of Jasinski. Upon a determination by the court favorable to Pobog, we have no doubt but that it will be able to formulate a proper judgment.

 . There remains to be considered the contention of the Bank that the suit as to it should have been dismissed for lack of jurisdiction on the ground that the requisite amount was not involved. This contention is based upon the Bank's theory that there was nothing in dispute between plaintiffs and it other than the sum of $405.00, which the Bank had received from the plaintiff Hartford Fire Insurance Company in payment of damages to the car occasioned by the Pobog-Coyle collision, which by the judgment under attack the Bank was required to pay to the insurer. We think this is a misconception of the situation. There was only one policy involved, although it is true that each of the plaintiffs assumed separate and distinct portions of the coverage provided. Even so, the rights and liabilities of each were in many respects dependent upon the other. The amount in controversy was the value of the policy in suit or, perhaps more accurately stated, the amount of the liability which plaintiffs were called upon to assume, and not merely the amount in dispute between plaintiffs and the Bank. See Overby v. Gordon, 177 U.S. 214, 20 S.Ct. 603, 44 L.Ed. 741. In Home Insurance Co. of New York v. Trotter, 8 Cir., 130 F.2d 800, 803, the court stated:

"But where in such actions the relief sought is a declaration of the validity or invalidity of a contract, the value of the contract determines the amount in controversy for the purpose of determining jurisdiction."

In State Farm Mut. Automobile Ins. Co. v. Hugee, 4 Cir., 115 F.2d 298, 302, 132 A.L.R. 188, the court stated:

"A case such as this is to be distinguished from one where there is a bona fide controversy between the nonresident insurance company and the insured, and where one holding a claim against the insured is brought in for the purpose of securing a complete settlement of the entire controversy. In such case the nonresident company is entitled to invoke the jurisdiction of the federal courts for the purpose of settling the controversy with the resident insured; and the fact that another resident may be joined for the purpose of obtaining a complete settlement of the controversy does not oust the jurisdiction."

It must not be overlooked that plaintiffs in their action sought against all the defendants, including the Bank, a declaratory judgment that the policy was null and void. As a basis for such declaration, the Bank and certain other defendants were charged with perpetrating a fraud in the procurement of the policy. As we have shown, the fraud, if any such there be, was committed by the Bank. More than that, it was in a sense a beneficiary because of the loss payable clause endorsement to the policy. It was, therefore, so we think, an indispensable party to the action. As such, the court acquired jurisdiction of it as well as of other defendants. The fact that specific relief was sought against the Bank of a sum less than the jurisdictional amount was only incidental to the main purpose of the suit and did not impair the jurisdiction of the court to determine the rights of all the parties, including the Bank.

The judgment is reversed and the cause remanded.

FINNEGAN, Circuit Judge.

When a motion for summary judgment is improvidently granted, as here, I would send the case back below without comment on the issue or issues of fact necessitating our reversal. The ultimate result reached has my full approval. Yet, and regretfully, I am unable to agree with everything stated by Judge MAJOR, because I think when litigants are to proceed again, at the trial level,

with a cause after our review, the matter should arrive below with a minimum of material which might stimulate preconceived notions on the part of everyone participating pursuant to our reversal.

For these reasons I do not wish to be bound by the majority's opinion beyond my approval, as already stated.