Marie P. JOHNSON, Plaintiff-Appellant,

v.

EQUITABLE LIFE ASSURANCE SOCIE-TY OF THE UNITED STATES, Defendant-Appellee.

No. 12818.

United States Court of Appeals Seventh Circuit.

March 7, 1960.

Rehearing Denied April 4, 1960.

Constantine Farmans, Chicago, Ill., for appellant.

Adlai E. Stevenson, III, Miles G. Seeley, Chicago, Ill., Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., of counsel, for appellee.

Before HASTINGS, Chief Judge, SCHNACKENBERG, Circuit Judge, and JUERGENS, District Judge.

JUERGENS, District Judge.

The United States District Court for the Northern District of Illinois, Eastern Division, granted defendant's motion for summary judgment and denied plaintiff's motion for summary judgment. This appeal followed.

Plaintiff, the beneficiary under a life insurance contract made between plaintiff's husband and Equitable Life Assurance Society of the United States, seeks a judgment in the amount of $12,000 plus interest. The defendant filed an answer partially admitting and partially denying the allegations of the complaint.

The facts, generally stated, are as follows:

Comanche Earl Johnson, hereinafter called the Insured, made application to the Residential Mortgage Department of the Equitable Life Assurance Society of the United States, hereinafter referred to as Equitable, for a $12,000 loan to be secured by a first mortgage on his home.

It is assumed that Equitable required additional security for the loan through insurance.[1] On March 27, 1958, the in-

---

1. Exhibit H attached to Equitable's reply on its motion for summary judgment advises that "Under the Assured Home Ownership Plan, life insurance in the amount of the mortgage loan is required as collateral to the loan and it must be in full force and effect. * * * If new insurance is used as the required collateral, the policy is issued providing for preliminary insurance at term rates, which is the lowest rate available, for a period of at least thirty days. * * * This is to provide reasonable time for completion of the title search and consideration of the loan application, and the premium on the permanent plan commences on the first day of the month at the end of the preliminary term period * * *."

sured executed application for insurance, Part I, to Equitable by which he applied for $12,000 life insurance. This application contained the following paragraph:

"There has been paid to Greig Griffin $20.16 for *Preliminary Term Insurance to* April 30, *Plus* $38.28, the first monthly premium on the policy herein applied for, in accordance with the provisions of the receipt bearing the same date and number as this application." (Emphasis supplied.)

The receipt given to the insured reads as follows:

"RECEIVED of Comanche Earl Johnson No. A502246 $20.16 Dollars for *Preliminary Term Insurance* to April 30 *plus* $38.28 Dollars, the first monthly premium on proposed insurance for $12,000 on the life of Comanche E. Johnson for which Part I of an application bearing the same number as above is this day made to The Equitable Life Assurance Society of The United States. If a satisfactory Part II of the application is furnished to the Society and if the Society shall be satisfied after such investigation and such medical examinations as it may require that the Proposed Insured is on this date insurable and qualified under the Society's rules and standards for insurance in the amount and on the plan applied for and at the premium specified herein, the insurance applied for shall take effect and be in force subject to the provisions of the policy applied for from the date of this receipt; if not so insurable and qualified, no insurance shall take effect hereunder, and the payment evidenced by this receipt shall be returned.

"Dated at Northbrook West Illinois 3/27/58 Greig Griffin Agent." (Emphasis supplied.)

The insured did pay to Equitable and Equitable did give insured its receipt for $20.16 for preliminary term insurance to April 30 plus $38.28, the first monthly premium on the policy applied for at the time Part I of the application for insurance was executed and delivered to Equitable.

Comanche E. Johnson died on March 29, 1958, of natural causes, and Part II of the insurance application was never completed.

Equitable's contention that the satisfactory completion of Part II of the application and acceptance by Equitable (after investigation and medical examination showing that the proposed insured was on that date insurable and qualified for insurance on the plan for which application was made) were prerequisites to insurance coverage, led the trial court to grant Equitable's motion for summary judgment.

In this the trial court erred.

■ All acts of the parties to this action were performed in Illinois; consequently Illinois law governs. The precise question raised in this appeal has never been presented to the Illinois courts for determination, however, the use and meaning of the language employed must be resolved in accordance with the law of that State.

The receipt discloses that $20.16 was paid for preliminary term insurance to April 30, that an additional amount of $38.28 was paid to cover the first monthly premium on the proposed insurance, following which appears the language which Equitable contends created conditions precedent to insurance coverage.

The language of the receipt provided that upon satisfactory completion of the conditions the insurance applied for was to become effective as of the date of the application. If this were the whole story, there would have been no need to have two separate premiums which according to the tenor of the receipt may have provided two types of insurance coverage—(1) a preliminary term insurance and (2) a permanent insurance plan. If in fact the insurance applied for was dependent on fulfillment of the conditions set out in the receipt, then

from the date of the receipt to the fulfillment of the conditions, insured would have had no insurance. Obviously this was not the intent of the parties. The intent was to obtain an interim policy until the permanent policy became effective, and for this purpose insured paid a premium for term insurance to cover the period between the application for and the acceptance by the appellee of the insured under the proposed insurance which we designate as the permanent policy.

This is what the lay individual would think; this is what any careful, reasonable prudent person would determine from the reading of Part I and the receipt. Insurers write their own applications, receipts, policies, etc., and if in doing so they burden the language used with dual interpretations, each equally reasonable, they must be chargeable with the confusion and ambiguity created by such dual meaning. Gaunt v. John Hancock Mut. Life Ins. Co., (2 Cir.,) 160 F.2d 599.

The law is clear that contracts of insurance, being entirely of the insurer's own making are construed strictly against the insurer and liberally in favor of the insured and where two interpretations, equally reasonable are possible, that construction should be adopted which will enable the beneficiary to recover. James v. Metropolitan Life Ins. Co., 1947, 331 Ill.App. 285, 73 N.E.2d 140.

The receipt and Part I contain an ambiguity; this ambiguity must be resolved in favor of the insured and coverage is effective under the preliminary term insurance. Illinois State Trust Co. v. Employees Life Co., 1956, 8 Ill.App.2d 455, 131 N.E.2d 789; Ziolkowski v. Continental Casualty Co., 1937, 365 Ill. 594, 7 N.E.2d 451. The preliminary term insurance was effective upon the receipt of the premium paid therefor. The conditions precedent, following the reference to proposed insurance, are limited to proposed insurance, and upon failure to comply with or fulfill those provisions, the permanent insurance would not be issued and the premium paid therefor would be returned to the applicant.

The receipt, as construed provides two consecutive insurance contracts of $12,000 each—the first from March 27, 1958, to April 30, which would terminate on that date—and the permanent policy which would be in force thereafter, provided that the insured successfully completed Part II of the application and otherwise satisfied Equitable as to his insurability for the permanent plan.

The preliminary term insurance provided coverage during the interim period between March 27, 1958 and the disposition of the proposed insurance application.

Judgment reversed and cause remanded to the United States District Court for the Northern District of Illinois, Eastern Division, with instructions to that court to set aside the summary judgment for the defendant and to grant plaintiff's motion for summary judgment for $12,000 and costs.

Reversed and remanded with directions.