**William A. THORNE, Receiver, Atlas Lumber & Door Co., Plaintiff-Appellant,**

v.

**AETNA LIFE INSURANCE COMPANY, Defendant-Appellee.**

**No. 17050.**

United States Court of Appeals Seventh Circuit.

Feb. 24, 1969.

Rehearing Denied March 19, 1969.

Milton A. Johnson, South Bend, Ind., for appellant.

Joseph T. Helling, Arthur A. May, South Bend, Ind., for appellee.

Before DUFFY, Senior Circuit Judge, SWYGERT and CUMMINGS, Circuit Judges.

DUFFY, Senior Circuit Judge.

This is a suit by the Receiver of Atlas Lumber & Door Company (Atlas) to re-

---

5. Under Rule 60(b) a motion to upset a judgment for fraud may only be brought within a year after judgment is rendered.

cover $100,000 under a contract of interim insurance. The facts are largely stipulated.

On December 10, 1964, Robert G. Reynolds, the President of Atlas, made an application to Aetna Life Insurance Company (Aetna) for insurance on his life in the sum of $100,000.00 payable to the corporation. He paid one month's premium of $86.56. Reynolds received a receipt which used the words "Binding receipt" and stated it was on account of the first premium on the life of Robert Glenn Reynolds.

The receipt further provided that the insurance "shall be effective from the date of medical examination (being the last examination if more than one is required by the Company) * * * provided the Company shall be satisfied that on said date the applicant was insurable as a standard risk in accordance with its rules and practices for said amount on said plan."

Under the heading "Notice re Binding Receipt" appears "This is a temporary receipt only. If the insurance is issued, a regular receipt signed by an executive officer of the Company and countersigned by the agent will accompany the policy."

Included in the application for insurance was an aviation supplement covering the life of Reynolds in the event he died in an airplane crash.

On September 30, 1964, Reynolds had applied for a $33,000.00 decreasing term insurance on which a similar "binding receipt" was issued. On October 30, 1964, Reynolds took an examination for that policy. He was requested to resubmit to another examination but he never did so. The Company's records show that Reynolds' case was "a special class at best," and Reynolds was regarded as a substandard risk. Reynolds was notified of this fact.

Without taking the physical examination as required by the insurance company, Reynolds left South Bend, Indiana, by plane on December 23, 1964, for a vacation trip to Florida. The plane crashed and Reynolds died on January 3, 1965.

The District Court found, and there is credible evidence to sustain the finding, that the Company's agent told Reynolds at least four times that he had no insurance coverage until he took his physical examination and that Reynolds understood this.

The complaint charged Aetna with fraud and misrepresentation but the trial court concluded that the evidence did not sustain such a charge. We agree!

The District Court found that "Because of information obtained partially as a result of the October 30th examination (on the application for the $33,000 policy) and partially from other sources, Reynolds was requested to re-submit to another examination for which it was important that a current home office specimen with specific gravity be obtained. * * * Several appointments were set up for such examination at Reynolds' convenience, and he was repeatedly informed of the necessity that it be taken * * * all such appointments were broken, various excuses for so doing being offered."

As of January 3, 1965, Aetna had not made any determination as to whether or not Reynolds was insurable under any of its conditions. The trial court found that Aetna could not have made such determination since the necessary evidence was not available, and that the reason for such lack of evidence was Reynolds' refusal to cooperate by meeting the appointments for medical examinations which had been set up for him.

This case is to be decided under Indiana law and therefore requires an analysis of Western & Southern Life Insurance Co. v. Vale, 213 Ind. 601, 12 N.E.2d 350. In that case, the policy did not contemplate a medical examination but rather relied upon representations made by the applicant in the written form to the effect that he was in sound health. The applicant paid a sum with the submission of the application and was issued a receipt which stated: "Provided the

insured be in sound health * * * the company's liability under such policy, if and as issued, shall commence as of the date of said application."

Vale was told that his policy was in effect from the date of the receipt. The Indiana court was obviously concerned that the insurance company could, in case of death before notification of acceptance, simply reject the application. This would be unconscionable and therefore they construed the agreement as providing insurance if the applicant was reasonably insurable at the time of application.

Here, the "binding receipt" explicitly stated that the policy was not to be effective until the examination was had. Appellant argues that since he paid a sum and was given a "binding receipt," Indiana law requires that he be given coverage for the interim. We do not agree. Aetna was not entitled to arbitrarily reject the policy. They were bound in the sense that if Reynolds had met their medical standards, objectively applied, he would have been entitled to insurance. The appellee could not have arbitrarily decided not to issue the policy after Reynolds had taken an examination even if he had died immediately thereafter, provided he had met their standard. The *Vale* case does not preclude an insurance company from refusing to begin coverage under a $100,000 policy until they are in a position to evaluate the risk. Reynolds was in no way misled about this requirement.

We therefore hold that the District Court was correct in concluding that there was at no time in effect any contract of insurance. In a memorandum accompanying that conclusion, the Court indicated that in its judgment it was open to the plaintiff to show that Reynolds had met the appellee's medical standards, even though he had never taken the required medical examination. This would, in effect, permit a person who had paid a sum to the insurance company and had been issued a "binding receipt," but who died before taking a medical examination, to demonstrate by other evidence that he was insurable.

The Court apparently was of the view that *Vale* required this result and so held despite the explicit language of the receipt delaying effectiveness until "the date of medical examination." In the instant case, it is of no significance since Reynolds, by his failure to take the examination needed, made it impossible to determine whether he was insurable. We therefore decline to decide whether Indiana law requires that a similarly situated plaintiff be permitted to show that the deceased was insurable even though he did not take a medical examination. It is enough to say that here there was no contract since Reynolds did not have the medical examination needed to make a judgment as to his insurability.

The judgment of the District Court is

Affirmed.