**Esther SCHEINMAN, Plaintiff-Appellant,**

**v.**

**PHOENIX MUTUAL LIFE INSURANCE COMPANY OF HARTFORD, CONNECTICUT, a corporation, Defendant-Appellee.**

**No. 17205.**

United States Court of Appeals
Seventh Circuit.

April 28, 1969.

Philip C. Zimmerly, Walter R. Stewart, Zimmerly & Johnson, Champaign, Ill., for plaintiff-appellant.

Michael M. Lane, J. Robert Geiman, Herbert C. Loth, Jr., Richard V. Henry, Jr., Chicago, Ill., for defendant-appellee, Peterson, Lowry, Rall, Barber & Ross, Chicago, Ill., of counsel.

Before CASTLE, Chief Judge, DUFFY, Senior Circuit Judge and FAIRCHILD, Circuit Judge.

DUFFY, Senior Circuit Judge.

This is a suit brought by plaintiff as designated beneficiary in what is alleged to be a contract of temporary life insurance. Jurisdiction is based upon diversity of citizenship.

Plaintiff's late husband, Daniel Scheinman, had two policies of life insurance with the defendant company which were issued in 1957. In August 1960, Scheinman made application for an additional policy of insurance in the amount of Fifty Thousand ($50,000) Dollars. He executed Part I of a two-part application and paid defendant's agent the sum of Two Hundred Fifty ($250) Dollars. He was given a "Conditional Binding Receipt". He submitted to a physical examination which was completed on August 20, 1960. He died the following day due to coronary thrombosis.

The following language appears in Part I of the 2-part application:

"$250.00 in cash has been paid to the agent hereunder, on account of the premium on the insurance of $50,000.00 applied for, the said sum to be applied in accordance with and subject to the provisions of the Conditional Binding Receipt bearing the same number as this application. * * * The insurance hereby applied for shall not take effect until the issuance of a policy and the payment of the first premium thereon, except as provided in the Conditional Binding Receipt bearing the same number herewith if a payment has been made thereunder."

The "Conditional Binding Receipt" issued on August 11 and given to Mr. Scheinman acknowledged the $250.00 payment but stated a number of conditions. The main condition as far as this suit is concerned stated that the insurance contract applied for "shall be in force * * * from * * * the date of the Medical Examination Application Part II * * *, provided the Home Office of the Company shall be satisfied that on the insurance date the proposed insured was insurable as a standard risk, for the amount and plan applied for, in accordance with the practices of the Company governing the acceptance of risks, and that the application was otherwise acceptable under the Company's regulations and underwriting practices."

Due to the amount of coverage applied for, the Company's underwriting practices required a physician's report in order to determine the insurability of the applicant. The Company's agent arranged for this examination to be performed by Dr. Irving Favus who, for a number of years, had been Mr. Scheinman's personal physician. An electrocardiogram was taken. After Dr. Favus had made the examination of Mr. Scheinman, his findings were recorded by him on Part II of the application.

The application and the electrocardiogram revealed that Mr. Scheinman had a history of heart trouble and had received treatment due to the condition of his heart. A history of heart disease covered a period from 1956 to 1960 which included chest pain, dyspnea (shortness of breath on exertion), and a rapid heart. It also indicated the use of Miltrate which was a medication used as a coronary dilator.

The electrocardiogram taken on August 17, 1960, which was submitted with the medical section of the application, was abnormal in that it established Mr. Scheinman was then suffering from coronary insufficiency, and had previously suffered a coronary attack. The District Court found that the heart condition of Daniel Scheinman had deteriorated from the time of an electrocardiogram of a prior date.

The defendant Company declined the application due to the history of heart disease and the degree of abnormality revealed by the electrocardiogram which made Daniel Scheinman an uninsurable risk for the plan and amount of insurance applied for, under the underwriting standards of the defendant.

Plaintiff was advised that the application of her late husband had been rejected and was tendered a check for Two Hundred Fifty ($250) Dollars which she refused.

Plaintiff claims that the application and the "Conditional Receipt" are ambiguous, and cites the well-established rule that in an insurance application, such ambiguities must be resolved against the insurer. However, we agree with the statement of the District Court: "I cannot agree with plaintiff that this is an instance of ambiguity of the sort usually justifying application of that general maxim of construction. * * * This proviso is not ambiguous nor is there any significant provision in either the receipt or the application itself which can be said to cast doubt upon its meaning."

We are considering a contract made in Illinois. Plaintiff argues that a decision of this Court in Johnson v. Equitable Life Assurance Society of U. S., 275 F.2d 315 (1960), which applied Illinois law, is directly in point. We disagree.

In *Johnson*, both the receipt and the application provided for temporary coverage and specified a separate premium for such coverage. The District Court carefully considered and discussed our opinion in *Johnson*. We agree with the conclusion of the trial court that our decision in *Johnson* is not controlling in the instant case.

In Gerrib v. Northwestern Mutual Life Insurance Company, 256 Ill.App. 506, the receipt provided that the policy of insurance would be in effect from the date of the receipt or the medical examination if the premium was paid and if the company "shall be satisfied that the appellant was, according to the rules and standards of the company, an acceptable risk for the amount of insurance and upon the plan hereby applied for." The Court found in that case that there was no contract for temporary insurance created by this receipt.

On February 24, 1969, we rendered a decision in William A. Thorne v. Aetna Life Insurance Company, 407 F.2d 809. In that case, Reynolds, the president of Atlas, applied for insurance on his life in the sum of $100,000.00. He paid one month's premium. He received a paper from the Insurance Company designated "Binding Receipt."

In *Thorne*, Mr. Reynolds was told several times by representatives of the insurance company that he must take a physical examination in order to obtain coverage, and several efforts were made to get him to a doctor's office. Several appointments were set up for examinations at Reynolds' convenience. However, without taking the examination, he left South Bend by plane, and he died in the crash of that plane. We do not think the *Thorne* case, decided under Indiana law, is controlling here, although a similar result was reached in construing the insurance application and the "Binding Receipt" in that case.

The judgment of the District Court is

Affirmed.