JOSEPH FREDERICK, et al., Plaintiffs

v.

HESS OIL VIRGIN ISLANDS CORPORATION, Defendant
and Third-Party Plaintiff

v.

D & M ELECTRIC COMPANY, INC.,
Third-Party Defendant

Civil No. 210/78

District Court of the Virgin Islands

Div. of St. Croix

June 30, 1980

ALBERT A. SHEEN, ESQ., Christiansted, St. Croix, V.I., *for plaintiffs*

BRITAIN H. BRYANT, ESQ. (BRYANT & LENAHAN), Christiansted, St. Croix, V.I., *for defendant and third-party plaintiff Hess Oil*

DAVID V. O'BRIEN, ESQ. (O'BRIEN & MOORE), Christiansted, St. Croix, V.I., *for third-party defendant D & M Electric Company, Inc.*

BROTMAN, *Judge By Special Assignment*

## MEMORANDUM OPINION WITH ORDER ATTACHED

This matter came before the Court without a jury for a trial on the third-party plaintiff's claim for indemnity. The Court having heard the testimony presented by the parties, having reviewed the documents admitted into evidence, and having considered the oral arguments and memoranda of counsel makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

(1) Plaintiff Joseph Frederick was employed by third-party defendant D & M Electric Corporation (D & M).

(2) During the course of his employment for D & M on November 11, 1976, Mr. Frederick was performing certain electrical work at the refinery operated by third-party plaintiff Hess Oil Virgin Islands Corporation (Hess).

(3) Plaintiff, while working at Hess, came into contact with an electrical charge which caused him to fall from a substantial height.

(4) Plaintiff had been working at a height of approximately twelve (12) feet before he fell and he was not using a ladder or scaffolding in the performance of his work.

(5) Plaintiff should have been using a ladder or scaffolding to

perform his work rather than climbing on the cross-arms up the I-Beam.

(6) Plaintiff was in the process of removing de-energized cable and in removing this cable he had to pass near 480 volt three phase runners which supply power to an electric crane.

(7) Plaintiff knew that the power lines supplying the crane were energized.

(8) Plaintiff came into contact with these power lines or a related power source and fell to the ground.

(9) Plaintiff suffered injuries related to the electrical shock and fall.

(10) Plaintiff brought suit against Hess to recover damages for the injuries sustained due to the electrical shock and fall.

(11) Plaintiff was injured as a result of his own negligence and as a result of a lack of supervision by his employer, D & M.

(12) By stipulation of the parties a judgment in the amount of $98,000 was entered in favor of Mr. Frederick and against Hess.

(13) D & M advanced $49,000 to be applied in satisfaction of the judgment against Hess, while reserving all of its rights against Hess in this indemnity action.

(14) D & M did not contest the reasonableness of the stipulated judgment between Mr. Frederick and Hess.

(15) On August 10, 1976, M. G. Maneilly, Secretary/Treasurer of D & M, excuted an indemnity agreement which recites as follows:

> D & M Electric, Inc., hereinafter referred to as "Contractor", agrees to defend, indemnify, exonerate and hold Hess Oil Virgin Islands Corp., its directors, officers, employees, representatives, servants and agents harmless against loss, damage or expense, by reason of any suits, claims, demands, judgments and causes of action for personal injury (including death) or property damage (including property of the parties) arising out of, or in any way in consequence of the performance of all work undertaken by the Contractor, his agents, servants and employees, and/or any subcontractor, his agents, servants and employees, for Hess Oil Virgin Islands Corp., except that, in no instance, shall contractor be held responsible for any liability, claim, demand or cause of action attributable solely to the negligence of Hess Oil Virgin Islands Corp.

(16) All contractors working for Hess were required to execute the same type of indemnity agreement.

526

(17) On September 20, 1976, a purchase order was executed by D & M and Hess which contained a clause which recites as follows:

(b) The Seller further will indemnify or save harmless, the buyer from and against any and all demands, loss or liability for or on account of any injury, including death, or damage received or sustained by any person or persons, including any employee, representative, agent, or invitee of the Seller of any of its subcontractors, or Buyer or Buyer's employees, by reason of any act or neglect on the part of the Seller or its subcontractors or the employees, representatives, agents or invitees of the seller or its subcontractors, in connection with or rising out of the furnishing of the articles, materials or work hereunder.

(18) The purchase order bore an effective date of September 1, 1976, and was in force and effect on November 11, 1976, and it was intended to cover the work being performed by Frederick at the time of his injury.

(19) Hess is a multimillion dollar corporation and D & M is a corporation having total assets in excess of $500,000.

(20) The indemnity agreements between Hess and D & M were part of a voluntary commercial association.

(21) D & M never complained that the indemnity agreements were unfair nor did D & M request any change in the indemnity agreements.

(22) D & M's business with Hess constituted approximately fifty percent (50%) of D & M's total business.

## CONTRACTUAL INDEMNITY

Hess seeks indemnification from D & M for the $98,000 paid to plaintiff Joseph Frederick on account of the injuries sustained by Mr. Frederick while working at Hess as an employee of D & M. Hess originally sought indemnity under various alternative theories. However, at oral argument counsel for Hess conceded that their claim was being advanced on the basis of express contractual liability. Counsel for D & M, in their trial memorandum, also agreed that if indemnification was to be allowed at all in this case, it could only be allowed on the basis of the express contract between D & M and Hess.

Indeed, in a case such as this, where a third-party plaintiff seeks indemnification from the employer of the plaintiff for money paid to the employee for injuries sustained on the job, it is highly questionable whether any other basis of liability could be advanced.

Indemnification under common law tort principles cannot be allowed since it would run contrary to the provisions of the Workmen's Compensation Act, 24 V.I.C. § 251 et seq. Stipe v. Thomas, 1979 St. Thomas Supp. 21 (Civ. 78-126, 1979).

██ Furthermore, a party cannot seek recovery under both an express contract and common law tort principles. An election must be made. Prater v. Luhr Bros., Inc., 366 N.E.2d 399 (Ill. App. 1977). Where there is a written indemnification agreement between the parties the Court will not seek to alter or modify the expressed intent of the parties on the basis of implication. Waller v. J. E. Brenneman Company, 307 A.2d 550 (Del. Super. 1973).

Therefore, in the matter sub judice, the respective rights of Hess and D & M must be determined by reference to their contractual agreements.

## ADHESION CONTRACT

Before proceeding to an interpretation of the indemnity agreements it behooves the Court to address a contention raised by D & M. D & M has characterized the indemnity agreements as contracts of adhesion[1] which should not be enforced.

█ The Court notes that this defense constitutes an affirmative matter which should have been pleaded in accordance with Fed. Rules of Civil Procedure 8(c) and 12(b). The defense was not included. The failure to include such a defense results in the involuntary waiver of the defense and its exclusion from the case. Jakobsen v. Massachusetts Port Authority, 520 F.2d 810, 813 (1st Cir. 1975); State Farm Mutual Automobile Insurance Co. v. Mid-Continent Casualty Co., 517 F.2d 292 (10th Cir. 1975); Camalier & Buckley-Madison, Inc. v. Madison H., Inc., 513 F.2d 407, 420–21 (C.A.D.C. 1975).

However, even assuming that this issue were properly before the Court the indemnity agreement involved here cannot be considered, an adhesion contract. Unquestionably, Hess is financially more powerful than D & M, and has considerable bargaining power. These facts alone do not mean that a less financially powerful company which has bargained with Hess can be relieved of contractual obligations which it has freely assumed. To follow such

---

[1] Adhesion Contract is a term descriptive of standard form printed contracts prepared by one party and submitted to another on a take it or leave it basis, wherein there is often no true equality of bargaining power. Standard Oil Company of California v. Perkins, 347 F.2d 379 (9th Cir. 1965).

a course would inject intolerable uncertainty into commercial transactions between large and small companies, or possibly eliminate such transactions.

 An adhesion contract is normally found to exist only within the context of a consumer's relation to a business or public enterprise. See OTTO v. Cities Service Co., 415 F.Supp. 837 (W.D. La. 1976); Henningsen v. Bloomfield Motors, Inc., 32 N.W. 358, 161 A.2d 69 (N.J. 1968). The concept of an adhesion contract is not meant to apply in situations where business enterprises bargain among themselves, merely because one of them is in a superior bargaining position. A business dissatisfied with contract terms may choose not to do business with the other party, although it may involve some alteration of the way in which the business is operated. OTTO v. Cities Service Co., 415 F.Supp. 837, 843 (W.D. La 1976).

 The factors which might lead a court to nullify certain provisions in a form contract between a business and a consumer do not exist here. While a consumer could be faced with a choice of agreeing to the provision or not buying a product or service *anywhere*, D & M could refuse to work for Hess at all and still have approximately fifty percent (50%) of its present business without taking on any new business.

 The fact that Hess requires an indemnity agreement from all of its contractors does not change this result. In United States v. Seckinger, 397 U.S. 203 (1970), the Supreme Court enforced an indemnity agreement in favor of the United States, in spite of its recognition that the United States occupied a superior bargaining position and required that such a clause be included in all of its fixed price contracts. Certainly Hess wields no more bargaining power in its dealings with D & M than the United States did in its dealings with Seckinger.

 Furthermore, D & M never requested that it be relieved of the mandatory indemnity agreement. There was no testimony to the effect that D & M was unable to recoup the cost of insurance necessitated by the indemnity agreement by increasing its charges to Hess. In most cases involving such an agreement the agreement merely allocates the burden of procuring insurance, the cost of which is recouped by the indemnitor in the price he charges. Jamison v. Ellwood Consolidated Water Company, 420 F.2d 787, 789 (3rd Cir. 1970). See also Commercial Insurance Company of Newark, New Jersey v. Gonzalez, 512 F.2d 1307 (1st Cir. 1975).

If the burden placed upon D & M by the indemnity clause could be offset by an increased price, it is difficult to see how the clause could be the product of a disparity of bargaining power, despite any inflexibility of Hess regarding the existence of the clause. Vitex Manufacturing Co. v. Carbitex Corp., 377 F.2d 795, 799 (3rd Cir. 1967). Where there is no disparity of bargaining power, even courts which do not favor indemnity clauses will enforce the clause. Titan Steel Corporation v. Walton, 365 F.2d 542 (10th Cir. 1966).

Finally, even where a court labels a contract one of adhesion, the usual result is that the contract is merely construed strictly against the party who drafted the form. Standard Oil Company of California v. Perkins, 347 F.2d 379 (9th Cir. 1965); Cabot Corporation v. SS Mormascan, 441 F.2d 476 (2d Cir. 1971); Osborn v. Boeing Airplane Company, 309 F.2d 99 (9th Cir. 1962); Thorne v. Aetna Life Insurance Company, 286 F.Supp. 620, 625, aff'd, 407 F.2d 809 (7th Cir. 1969); Messina v. Mutual Benefit Health and Accident Ass'n., 228 F.Supp. 865, 868 (D.D.C. 1964), aff'd, 350 F.2d 458 (1965). See also United States v. Seckinger, 397 U.S. 203 (1970).

 Inasmuch as the contract here was drafted by Hess, it will be construed against Hess in the event of any ambiguity.

## THE INDEMNITY CONTRACT

Before construing the indemnity contract, the Court must decide which of the two agreements controls. This is necessary because the two agreements have a different scope as to the conditions under which D & M will be required to indemnify Hess.

The agreement executed on August 10, 1976, requires that the injury underlying the claim for indemnity be one ". . . arising out of or in any way in consequence of the performance of all work undertaken by the Contractor . . . except that in no instance shall contractor be held responsible for any liability . . . attributable solely to Hess . . .". This agreement would require D & M to indemnify Hess for loss due to any injury connected with the work of D & M, unless the liability was attributable solely to Hess' negligence. Thus, if the injury was caused in part by a third party, D & M would have to indemnify Hess regardless of whether D & M was responsible for the injury.[2]

---

[2] Hess seemed to take the position that by virtue of the August 10, 1976, indemnity agreement D & M would be required to indemnify Hess for 100% of its loss stemming from an injury related to D & M's work in any of the following situations.

(1) D & M is 90% responsible for the injury and Hess is 10% responsible.

The indemnity clause on the purchase order of September 20, 1976, requires D & M to indemnify Hess for loss from injury, by reason of any act or neglect on the part of D & M, its employees, invitees or sub-contractors, in connection with the work being performed by D & M for Hess.

This clause requires negligence on the part of D & M or at the very least that D & M's act be *the* cause of the injury before Hess is entitled to indemnity. For several reasons it is this clause which must control Hess' claim for indemnity.

 First, the clause on the purchase order specifically states that it is to govern the work being performed thereunder: ". . . in connection with or arising out of the furnishing of the articles, materials or work hereunder." The indemnity agreement of August 10, 1976, does not purport to relate to any particular work at all. Since Mr. Frederick was injured while performing work covered by the purchase order it is only reasonable to apply the clause, drafted by Hess, which specifically sets forth the indemnity agreement to be applied to the work covered by that purchase order.

 Secondly, if we analyze the two separate indemnity agreements as part of a single contractual relation, the different scope of the agreements creates an inconsistency as to the proper basis upon which Hess may seek indemnity. The clause in the purchase order is more specific in that it explicitly relates only to the performance of certain work. Where there is an inconsistency between general provisions and specific provisions, the specific provisions will control by qualifying the general provisions. RESTATEMENT OF CONTRACTS, § 236(c). Here the more specific provision on indemnity will qualify the more general with respect to the basis upon which Hess may seek indemnity in this case.

Thirdly, if the two indemnity agreements are scrutinized as part of a single contractual relation there exists some doubt as to the

(2) D & M is 1% responsible for the injury and Hess is 99% responsible.

(3) Third Party is 50% responsible for the injury and Hess is 50% responsible.

Hess' position seems to be that D & M must indemnify Hess for Hess' own negligence unless Hess is 100% responsible for an injury. While this may have been Hess' intent, the language of the clause is not sufficiently clear and unequivocal to allow Hess indemnity for its own negligence. United States v. Seckinger, 397 U.S. 203 (1970); Gimbel Brothers, Inc. v. William H. Vanderherchen, Inc., 468 F.2d 597 (3rd Cir. 1972); Quinones v. Township of Upper Moreland, 187 F.Supp. 260, 266, aff'd, 293 F.2d 237 (3rd Cir. 1961).

The word "solely" creates some question as to what was intended. However, the doubt is resolved against Hess, who both drafted the agreement and seeks indemnity from its own negligence. Neville Chemical Company v. Union Carbide, 422 F.2d 1205 (3rd Cir. 1970).

531

basis upon which Hess may seek indemnity. This is due to the ambiguity inherent in the two paragraphs which set forth different bases upon which indemnity may be sought. This doubt must be resolved against Hess who drafted both agreements. United States v. Seckinger, 397 U.S 203, 216 (1970); Gimbel Brothers, Inc. v. William H. Vanderherchen, Inc., 468 F.2d 597 (3rd Cir. 1972); DiLeonardo v. Gilbane Building Co., 334 A.2d 422 (Rhode Island 1975); Batson-Cook Co. v. Georgia Marble Setting Co., 144 S.E.2d 547, 551 (Ga. App. 1965); Basic v. Ford Motor Company, 166 N.W.2d 636, 638 (Mich. App. 1968).

Finally, as between the two indemnity agreements the one contained on the purchase order was executed later in time. As between two inconsistent contracts the one later in time will prevail over the earlier contract. 17 Am.Jur.2d Contracts, § 265. Therefore, the indemnity clause on the purchase order must govern any claim by Hess.

## APPLICATION OF THE INDEMNITY CLAUSE

According to the indemnity clause on the purchase order D & M will indemnify Hess against any and all demands, loss or liability for or on account of any injury sustained by any person by reason of any act or neglect on the part of D & M or its employee. Under this agreement Hess is clearly entitled to indemnity.[3] Hess has suffered a loss of $98,000 by virtue of the demand made by Mr. Frederick. The loss was sustained because of the injury of Mr. Frederick. The injury was caused by the act or negligence of Mr. Frederick himself,

---

[3] Counsel for D & M, at oral argument, asserted a right to an involuntary dismissal because of Hess' alleged failure to demonstrate its potential liability (i.e., its negligence). This contention is erroneous in several respects. First, Hess' right to indemnity is to be determined by reference to the contract. The contract doesn't require Hess to show that it might have been found negligent at a trial on the merits, but merely that it suffered a loss or was faced with a demand by virtue of an injury caused by the act or neglect of D & M or its employee. Thus, what Hess might have to prove if its claim for indemnity were based on common law tort principles is irrelevant here.

Additionally, Hess' potential liability seems apparent from the record before the Court. Hess was sued by Frederick for an injury received at Hess' refinery. Hess settled the case for $98,000. D & M, a participant in the settlement conference, did not contest the reasonableness of the settlement. It cannot now claim that the settlement was unreasonable. Its failure to contest the settlement estops it from claiming that Hess did not or would not have suffered any loss, or have incurred any liability.

an employee of D & M or by D & M's failure to properly supervise Mr. Frederick in the performance of his work.[4]

■ All of the elements upon which Hess may predicate a claim for indemnity have been established. Accordingly, Hess is entitled to a judgment of $98,000 on its claim for indemnity, against D & M Electric Company. Of course D & M will receive credit for the $49,000 it advanced as part of the settlement with Frederick.

## COMPARATIVE NEGLIGENCE STATUTE[5]

At oral argument counsel for D & M made the argument that the Virgin Islands comparative negligence statute somehow affected Hess' right to indemnity. The thrust of the argument was that because that statute contemplates that judgment will be entered against a defendant in proportion to its own negligence that Hess' potential liability extended only insofar as it was negligent. Therefore, according to the argument, Hess could only be seeking indemnity for its own negligence. Since the indemnity agreements do not clearly demonstrate an intent to relieve Hess from the consequences of its own negligence it is asserted that Hess would not be entitled to indemnity.[6]

The flaw in the argument lies in the fact that the parties have agreed that the rights of Hess to indemnify shall be determined primarily by reference to the contract. If Hess' loss occurs under the conditions set forth in the contract it is entitled to indemnity without regard to what may have been the result in a trial.

If Hess' claim for indemnity were based on common law tort rather than contract, the conditions under which Hess would be liable in a trial might have some application. The comparative negligence statute might then place some limitation on the right to indemnity. However, the claim here is based on contract not tort law.[7]

---

[4] The result in this case may have differed if D & M had presented any evidence to show that Hess was responsible for the injury to Frederick. No such evidence was presented. Only Hess produced evidence as to whose acts of negligence caused the injury to Mr. Frederick. That evidence mostly pointed to Frederick himself, or to a lesser degree to D & M's supervisors. In the absence of any evidentiary basis for apportioning fault, no apportionment will be made.

[5] 5 V.I.C. § 1451.

[6] The argument was in part based on reference to the part of the agreement of August 10, 1976, which excludes indemnity for injuries attributable solely to the negligence of Hess.

[7] An action against D & M would be barred by the Workmen's Compensation Act, 24 V.I.C. § 251 et seq.

Furthermore, the indemnity clause in the contract clearly contemplates that Hess could suffer a loss by virtue of the act or neglect of D & M. If D & M's analysis of Hess' potential tort liability is correct, the contract itself shows an intent to disregard the conditions under which Hess could be found liable in tort. Assuming the accuracy of D & M's analysis of the law, Hess could not suffer a loss by reason of D & M's acts or negligence. Ergo, there would be no reason for Hess to seek indemnity. Such an interpretation would render the clause worthless and frustrate the clearly expressed intent of the parties.

Additionally, D & M's analysis of Hess' potential tort liability is defective or at best under-inclusive. In a situation where Hess and a third party were defendants in the primary action by the injured person, if both were found responsible for the injury, judgment could be entered against Hess for the full amount of the plaintiff's award. Liability of defendants to plaintiff is still joint and several. 5 V.I.C. § 1451(d).

Moreover, in an action against Hess, alone, by an employee of D & M, if the jury found that Hess and D & M were each 30% responsible for plaintiff's injury, and the jury found plaintiff's damages to be $100,000, Hess would not be entitled to equitable credit for the percentage of the injury attributable to D & M. Assuming the other 40% responsibility for the injury was plaintiff's, judgment would be entered against Hess for $60,000. Thus, Hess would have suffered an indisputable loss, and incurred liability due to the negligence of D & M.

This result would be dictated by the case of Sarauw v. Oceanic Navigation Corporation and VLCC Andreas Atlas (Civil Nos. 79-2076 and 79-2077, 3rd Cir. 1980). The situation there was identical to that just described. Hess was sued by an employee of a contractor. The jury found that the contractor was 25% responsible for plaintiff's injury. The Third Circuit, in reliance on Edmonds v. Compagnie Generale Transatlantique, 443 U.S. 256 (1979), held that the equitable credit doctrine was not an intended part of the Virgin Islands comparative negligence statute.

## CONCLUSION

The foregoing findings of fact and conclusions of law clearly establish Hess' right to be indemnified by D & M for the loss suffered by virtue of the injury to Mr. Frederick and the stipulated judgment entered against Hess. Accordingly, judgment will be

entered against D & M for $98,000. D & M will receive credit for the $49,000 previously advanced.

## ORDER

This matter came on for hearing before the Court on 3 June, 1980. Having received the evidence and heard the argument of counsel and for the reasons set forth in the memorandum opinion of even date, it is hereby

ORDERED THAT:

(1) Judgment be, and is hereby, entered in favor of third-party plaintiff, Hess Oil Virgin Islands Corporation, and against third-party defendant, D & M Electric Company, Inc., in the amount of $98,000, with credit to be given to D & M Electric Company, Inc., for $49,000 previously advanced; and

(2) Each party is to bear its own costs and attorney's fees.